# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2018-NMSC-005

Filing Date: January 11, 2018

Docket No. S-1-SC-36379

STATE OF NEW MEXICO ex rel.
RAÚL TORREZ, Second Judicial District Attorney,

      Petitioner,

v.

HON. STAN WHITAKER,

      Respondent,

PAUL SALAS and
MAURALON HARPER,

      Real Parties in Interest.

ORIGINAL PROCEEDING

Office of the Second Judicial District Attorney
Presiliano Raúl Torrez, District Attorney
Kevin P. Holmes, Assistant District Attorney
Albuquerque, NM

for Petitioner

Hector H. Balderas, Attorney General
Joshua Rutledge Granata, Assistant Attorney General
Santa Fe, NM

Jones, Snead, Wertheim & Clifford, P.A.
Jerry Todd Wertheim
Santa Fe, NM

for Respondent

Jason Benjamin Wheeless

Steven P. Archibeque
Albuquerque, NM

for Real Party in Interest Paul Salas

Bennett J. Baur, Chief Public Defender
C. David Henderson, Appellate Defender
Santa Fe, NM

Jeff Rein, Assistant Public Defender
Albuquerque, NM

for Real Party in Interest Mauralon Harper

Hector H. Balderas, Attorney General
Kenneth H. Stalter, Assistant Attorney General
Santa Fe, NM

for Interested Party

## OPINION

**DANIELS, Justice.**

**{1}** One of the most significant new tools provided to the New Mexico criminal justice system as a result of the amendment to the bail provisions in Article II, Section 13 of the New Mexico Constitution, approved by the New Mexico Legislature in February 2016 and passed by New Mexico voters in the November 2016 general election, is the judicial authority to deny pretrial release—for any amount of money—if a prosecutor shows by clear and convincing evidence that no release conditions a court could impose on a felony defendant would reasonably protect the safety of any other person or the community.

**{2}** In this case, we have been requested to address the nature of evidentiary presentation required by this new detention authority. We agree with courts in all other federal and state bail reform jurisdictions that have considered the same issues, and we hold that the showing of dangerousness required by the new constitutional authority is not bound by formal rules of evidence but instead focuses on judicial assessment of all reliable information presented to the court in any format worthy of reasoned consideration. The probative value of the information, rather than the technical form, is the proper focus of the inquiry at a pretrial detention hearing.

**{3}** In most cases, credible proffers and other summaries of evidence, law enforcement and court records, or other nontestimonial information should be sufficient support for an informed decision that the state either has or has not met its constitutional burden. But we

2

also agree with other jurisdictions that a court necessarily retains the judicial discretion to find proffered or documentary information insufficient to meet the constitutional clear and convincing evidence requirement in the context of particular cases.

## I.      PROCEDURAL HISTORY

**{4}**      This case came before us on a petition for writ of superintending control filed by Second Judicial District Attorney Raúl Torrez. The petition sought to have this Court order Respondent District Judge Stan Whitaker to conduct new detention hearings in two specific cases, *State v. Salas*, D-202-LR-2017-67, and *State v. Harper*, D-202-LR-2017-68, and provide guidance on the nature of the evidence required in the pretrial detention hearings authorized by the 2016 constitutional amendment.

**{5}**      We first review the history of the two cases that are the subject of the petition.

### A.      *State v. Salas*

**{6}**      Paul Salas was arrested on March 16, 2017, and charged in a single criminal complaint with forty-seven separate armed robberies of dozens of Bernalillo County businesses in a five-month period.

**{7}**      The complaint, prepared and signed under oath by the investigating police case agent, alleged the facts reported by the separate victims and noted that each of the robberies had been committed by a person fitting the physical description of Salas, who was dressed similarly, who brandished a firearm, and who otherwise exhibited the same modus operandi in each of the robberies; that surveillance video available in most of the robberies confirmed that the same robber, who walked with the same characteristic gait, appeared to be responsible; that in the most recent robbery, an electronic tracking device placed in the bag of stolen cash and merchandise allowed police to immediately chase down and arrest the fleeing Salas and a codefendant and retrieve the robbery proceeds and other evidentiary items; and that after his arrest Salas waived his *Miranda* rights and confessed to each of the forty-seven charged robberies in a lengthy debriefing with the case agent who had prepared the sworn criminal complaint, providing a detailed account of each admitted robbery that was consistent with the victim reports.

**{8}**      The day after Salas's arrest, the State filed a motion for pretrial detention. The motion contended that Salas's alleged five-month crime spree and the fact that he was a wanted fugitive from another state demonstrated "the ability to elude police and . . . an unwillingness to abide by law and cooperate [with] law enforcement." The motion stated that he "has shown a blatant disregard for the value of a human life and . . . a pattern for violence," that because of the nature of his crimes Salas presented "a serious danger to the community," and that there were no conditions "other than a no bond hold that would protect the safety of the public."

3

**{9}** No probable cause determination had been made by a court or grand jury on any of the charged offenses by the time of the March 22, 2017, detention hearing, and the district court made no probable cause determination in connection with the detention hearing.

**{10}** At the hearing on its detention motion, the State proffered the sworn criminal complaint in this case and a fugitive complaint on which Salas recently had been arraigned pending extradition to Arizona on a sex offense but called no live witnesses and introduced none of the underlying materials relied on by the case agent in preparing the robbery complaint.

**{11}** Salas offered no affirmative or rebuttal information concerning the accuracy or truthfulness of the information presented to the district court by the State and did not challenge his identity as the Paul Salas reported in the complaint to have been pursued, arrested, searched, and interrogated.

**{12}** Accordingly, the hearing consisted primarily of argument concerning the nature, reliability, and sufficiency of the form of documentary information offered by the State, with the defense arguing generally that the documentary evidence was insufficient to meet the State's clear and convincing evidence burden without a live witness to testify and be cross-examined about the documents' accuracy and reliability.

**{13}** In oral and written rulings, Respondent denied the detention motion, refusing to admit the criminal complaint on the ground that it was deemed unreliable and violative of due process in the absence of corroborating or authenticating witnesses that the defense could cross-examine. After denying detention, Respondent ordered Salas to be placed on pretrial conditions of release that included close supervision, monitoring, and a cash-only bond of $100,000, in addition to the $100,000 cash-only bond that had been set earlier on the Arizona fugitive complaint and in addition to any other applicable money bonds.

## B.	*State v. Harper*

**{14}** Mauralon Harper was charged in a sworn criminal complaint with attempted murder, aggravated battery with a deadly weapon, shooting at a vehicle resulting in great bodily harm, and tampering with evidence.

**{15}** The complaint alleged that Harper shot his girlfriend in the abdomen as she got into her car after arguing with Harper and ordering him out of her apartment. The investigating detective who executed the complaint reported that he joined other officers in responding to a report of a shooting at the victim's address. There they found several people attending to the bleeding victim as she lay on the ground. She was able to tell officers, "Mauralon shot me," before being transported to the hospital for emergency surgery.

**{16}** A neighbor who knew both Harper and the victim told police she had heard the two arguing, had heard the sound of gunshots and the victim screaming, and then saw Harper

4

pointing a handgun toward the victim's car and the victim lying on the ground next to the car.

**{17}** Another witness who knew and could identify Harper stated that moments after she heard the gunshots she observed Harper running from the scene with a gun in his waistband.

**{18}** The investigating detective recited that he personally observed at least thirteen bullet holes in a car that was registered to the victim and parked at the scene and that the bullet holes and casing locations were consistent with the eyewitness accounts that Harper was standing in the area of the victim's apartment when he fired toward the victim's car.

**{19}** The District Attorney's office filed a motion to detain Harper pending trial. As in the *Salas* case, no determination of probable cause by a court or grand jury had been made either before or during the detention hearing.

**{20}** At the hearing, the prosecutor proffered the criminal complaint in support of the detention motion. The prosecutor also proffered court documents recording Harper's six prior convictions, including three felony convictions for bank robbery, assault on a police officer, and drug possession; documents reflecting three past domestic violence restraining orders against Harper obtained by three separate complainants; documents reflecting a pending robbery and evidence-tampering case in which Harper was currently being held without bond on a release revocation order for failure to appear; documents reflecting six past bench warrants for failure to appear; and a current district court pretrial services risk assessment that placed him in the highest risk category, calling for either intensive supervision or pretrial detention.

**{21}** In addition to the documentary evidence, the State proffered a video and images of text messages from the victim's phone, which the prosecutor represented to contain evidence that corroborated the State's version of the charged offenses. Although the defense argued briefly that the unreliability of the State's documentary evidence, in the absence of live testimony, left open to question whether Harper was the same Mauralon Harper referenced in the documents, the defense never offered affirmative or rebuttal evidence or even denied that he was the person who had shot at his girlfriend, instead relying on objections to the admissibility and weight of the State's submissions.

**{22}** Respondent denied the request for detention in oral and written rulings but then ordered Harper to be placed on multiple pretrial conditions of release that included close supervision, monitoring, and a secured bond in the amount of $100,000.

**{23}** In the oral bench ruling at the conclusion of the hearing, Respondent stated that he would not admit the video and text messages because the State did not provide a witness to testify to their authenticity and reliability and be available for cross-examination. While he stated in the oral ruling that he was admitting the criminal complaint and the other documents regarding Harper's criminal history over defense objections, in the subsequent

written order Respondent recited that the contents of the criminal complaint were unreliable and therefore inadmissible and stated that the admission of the complaint's hearsay contents, "without more, would deprive the Defendant a meaningful opportunity to challenge the State's evidence, which is in violation of his right to due process of law."

## C.     The Petition for Writ of Superintending Control

**{24}**     After Respondent denied the State's detention motions in *Salas* and *Harper*, Petitioner Torrez sought a writ of superintending control from this Court. Respondent, Defendants Salas and Harper, whom the petition named as real parties in interest, and the Attorney General filed separate responses to the State's petition, pursuant to Rule12-504(C) NMRA ("The respondent, the real parties in interest, and the attorney general may file a response to the petition [for an extraordinary writ].").

**{25}**     As framed in the petition, the controversy between the parties was a clash of absolutist positions that centered on whether the prosecution must always present live witnesses, as the petition alleged the Respondent was requiring, or whether live witnesses can never be required, as the petition seemed at times to contend. Petitioner asked this Court to order the district court to reconsider the State's motions for pretrial detention and to issue a written opinion providing guidance to inferior courts on how to interpret and apply the new pretrial detention provisions recently added to Article II, Section 13 of the New Mexico Constitution.

**{26}**     In his response to the State's petition, Respondent took the position that due process of law may require live witness testimony to satisfy confrontation rights at pretrial detention hearings and that in these two cases he did not abuse his judicial discretion in denying the State's motions for pretrial detention.

**{27}**     Salas and Harper argued that Respondent did not abuse his discretion to require live witnesses at a pretrial detention hearing when he found the exhibits and proffers insufficient to meet the State's burden of proof.

**{28}**     The Attorney General urged this Court to follow federal detention hearing precedents and hold that a court may rely on proffers and documents alone without violating the due process rights of an accused but to recognize that the court retains the discretion to require one or more live witnesses when there is a question about the credibility or authenticity of nonwitness information.

**{29}**     Following oral argument on the petition, this Court delivered an oral ruling from the bench granting the writ, providing guidelines for the evaluation of evidence in detention hearings, directing Respondent to conduct new hearings in light of those guidelines, and advising the parties that the Court would issue a full precedential opinion amplifying our oral ruling. This is that opinion.

## II.    DISCUSSION

**{30}**    Article VI, Section 3 of the New Mexico Constitution provides that the New Mexico Supreme Court has the power of superintending control, a long-standing power "to control the course of ordinary litigation in inferior courts." *State v. Roy*, 1936-NMSC-048, ¶ 89, 40 N.M. 397, 60 P.2d 646. We may exercise our power of superintending control when it is "in the public interest to settle the question involved at the earliest moment." *Kerr v.Parsons*, 2016-NMSC-028, ¶ 16, 378 P.3d 1 (internal quotation marks and citation omitted). In granting a writ of superintending control, we may offer guidance to lower courts on how to properly apply the law. *See New Energy Economy, Inc. v. Vanzi*, 2012-NMSC-005, ¶ 25, 274 P.3d 53 (providing guidance to the Court of Appeals with respect to who has the right to become appellees in administrative rule-making appeals); *Dist. Court of Second Judicial Dist. v. McKenna*, 1994-NMSC-102, ¶ 1, 118 N.M. 402, 881 P.2d 1387 (providing guidance to a district court with respect to convening a grand jury).

**{31}**    While a writ of superintending control should not "be used as a substitute for . . . appeal," *Chappell v. Cosgrove*, 1996-NMSC-020, ¶ 6, 121 N.M. 636, 916 P.2d 836, at the time the petition was filed in this case we had not yet promulgated our July 1, 2017, rules providing expedited appeals from detention-hearing decisions. *See, e.g.*, Rule 5-405(A)(3) NMRA (providing that either party may appeal an order regarding pretrial release or detention); Rule 12-204 NMRA (providing expedited appellate procedures). Because this case presents "an issue of first impression . . . without clear answers under New Mexico law," *Chappell*, 1996-NMSC-020, ¶ 6, and because it involves new constitutional provisions with serious public safety implications, we agree that this is an appropriate case in which to exercise our superintending control authority.

**{32}**    In order to address the proper interpretation of the new detention authority created by the November 2016 constitutional amendment and the resulting July 2017 court rules, it is important to understand the reasons for their creation and the sources and historical construction of the provisions we are called on to explicate in this case.

**{33}**    In *State v. Brown*, 2014-NMSC-038, 338 P.3d 1276, this Court conducted a comprehensive review of the origins and requirements of then-existing United States and New Mexico bail law. While *Brown* created no new rules of law, but simply traced the history and requirements of existing law, it took notice of the "enduring inequalities in our nation's system of bail," which has come to rely heavily on an accused person's ability to purchase a bail bond as the determining factor in releasing or detaining a person before a trial that would decide guilt or innocence. *Id.* ¶ 35. The combination of those realities resulted in a system lacking in rational justice, where clearly dangerous defendants or those who pose substantial flight risks have been able to buy their way out of jail, while large numbers of poorer, low-risk defendants have been held in jail simply for lack of money, with substantial harm done to them, their families, and the taxpayers who bear the ultimate burden of housing, feeding, guarding, medicating, and caring for them. *See id.* ¶¶ 33-35.

7

**{34}** In *Brown* we traced key features of bail reforms in the United States, including the movement toward minimizing the detention of low-risk defendants simply for lack of money to buy a bond, as reflected in the provisions of the federal Bail Reform Act of 1966, Pub. L. 89-465, 80 Stat. 214, 214-17, *repealed by* Bail Reform Act of 1984, Pub. L. 98-473, 98 Stat. 1837, 1976-85, that "established a presumption of release by the least restrictive conditions, with an emphasis on non-monetary terms of bail." *Brown*, 2014-NMSC-038, ¶ 33 (internal quotation marks and citation omitted). In 1972, New Mexico like many other American jurisdictions tracked the provisions of those federal reforms in their own bail laws. *Id.* ¶ 37. Those preferences for nonfinancial release conditions remain essentially unchanged in current federal law and in New Mexico law, including our newest court rules. *See* 18 U.S.C. §3142(c)(2) (2012) (requiring that in determining "[r]elease . . . conditions" for an accused person, "[t]he judicial officer may not impose a financial condition that results in . . . pretrial detention"); Rule 5-401(E)(1)(c) NMRA ("The court shall not set a secured bond that a defendant cannot afford for the purpose of detaining a defendant who is otherwise eligible for pretrial release.").

**{35}** Many other jurisdictions have also followed the federal model in explicitly prohibiting pretrial detention simply for lack of money to buy a bail bond. *See* D.C. Code Sec. 23-1321(c)(3) (West 2017) (prohibiting a court from setting a "financial condition" that would "result in the preventive detention of the person"); Mass. Gen. Laws Ann. ch. 276, § 58A(2)(B)(iv) (West 2017) (providing that a "judicial officer may not impose a financial condition that results in the pretrial detention of the person"); *see also* N.J. Stat. Ann. § 2A:162-17(c)(1) (West 2017) (providing that a "court shall not impose . . . monetary bail . . . for the purpose of preventing the release of the eligible defendant").

**{36}** A number of states have taken other steps to decrease the justice system's reliance on commercial sureties and other monetary bail. *See, e.g.*, Ky. Rev. Stat. Ann. § 431.510 (West 2017) (abolishing by statute the commercial bail bond industry); *see also*, 725 Ill. Comp. Stat. Ann. 5/110-7(a) (West 2017) (effectively abolishing the commercial bail bond industry by requiring any money bail to be paid directly to the court rather than through a commercial surety); Or. Rev. Stat. Ann. § 135.265 (West 2017) (same); Wis. Stat. Ann. § 969.12(2) (West 2017) (same); *cf.* Colo. Rev. Stat. § 16-4-103(3)(a)-(b), 4(b) (West 2017) (instructing courts to consider risk assessment instruments and a person's financial condition when setting bond and prohibiting courts from setting bonds based solely on the level of offense).

**{37}** While those reforms focused on alleviating one of the worst consequences of using money to decide who will be released pretrial—jailing people for lack of money instead of for any real risk they posed—they did little to address the other primary undesirable result of the money system—releasing dangerous defendants into the community simply because they could arrange to buy their way out of jail. To address that very serious problem, new legal authority for judges to deny pretrial release based on findings of dangerousness has been created in a growing number of federal and state jurisdictions.

8

**{38}** Those community safety reforms began in the District of Columbia four years after passage of the federal Bail Reform Act of 1966.

## A.      District of Columbia

**{39}** Prior to 1970, in the vast majority of jurisdictions defendants had a constitutional or statutory right, at least on paper if not always in practice, to be released on bail prior to trial for virtually all crimes not punishable by death. *Bail: An Ancient Practice Reexamined*, 70 Yale L.J. 966, 967 (1961). As we noted in *Brown*, Article II, Section 13 of the New Mexico Constitution, like the constitutions and laws of most American states, followed a 1682 Pennsylvania model and contained an almost absolute right to bail in noncapital cases that required judges to release virtually all defendants, no matter how significant a threat they might pose to community safety after their release. *Brown*, 2014-NMSC-038, ¶¶ 26, 37.

**{40}** In a significant change from that history, Congress gave new risk-focused pretrial detention authority to District of Columbia judges as part of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub. L. 91-358, 84 Stat. 473, 642-50 (1970) (D.C. Act), now codified in relevant part as D.C. Code Sections 23-1321 to -1332. *See* Thomas C. French, *Is It Punitive or Is It Regulatory? United States v. Salerno*, 20 U. Tol. L. Rev. 189, 194 (1988).

**{41}** Section 23-1322(b)(2)(B), D.C. Act 644-45, now codified as Section 23-1322(b)(2) (2013), permitted a court to deny pretrial release on any conditions if the court found by "clear and convincing evidence that" no conditions of release would "reasonably assure the safety of any other person or the community." Significantly for the issues we address in this opinion, Section 23-1322(c)(5), D.C. Act 645, now codified as Section 23-1322(d)(4), also provided that "pretrial detention hearings . . . need not conform to the rules pertaining to the admissibility of evidence in a court of law."

**{42}** The constitutionality of pretrial detention and the evidentiary requirements applicable to detention hearings in the District of Columbia were addressed thoroughly in *United States v. Edwards*, 430 A.2d 1321 (D.C. 1981).

**{43}** In a significant holding for the future of pretrial detention laws, *Edwards* held that the language and history of the excessive bail prohibition in the Eighth Amendment to the United States Constitution made it clear that there has never been an absolute federal constitutional right to pretrial release like that contained in the Pennsylvania constitutional model. *Id.* at 1328.

**{44}** After resolving the constitutionality of pretrial detention as a general concept, *Edwards* addressed arguments relating to the construction and constitutionality of specific features of the D.C. Act, including the evidentiary procedures at detention hearings. *See Edwards*, 430 A.2d at 1334. Considering the statutory language and legislative history of the D.C. Act, *Edwards* concluded that detention hearings were not intended to be formal trials

where strict rules of evidence controlled. *See Edwards*, 430 A.2d at 1334. Instead, information could be presented by hearsay: "'proffer or otherwise.'" *Id.* (quoting Section 23-1322(c)(4), D.C. Act 645). Sworn testimony was intended to be "'the exception and not the rule,'" *Edwards*, 430 A.2d at 1334 (citation omitted), although a court retained the right to "require direct testimony if dissatisfied with a proffer." *Id.*

**{45}**  *Edwards* also held that neither the Confrontation Clause nor the Due Process Clause precludes reliance on hearsay and proffers at bail and detention hearings. *See Edwards*, 430 A.2d at 1337. In considering what process is due in a detention proceeding, *Edwards* relied on *Gerstein v. Pugh*, 420 U.S. 103 (1975), in which the United States Supreme Court held that, while a prompt judicial determination of probable cause is required to justify restraints on the liberty of a defendant pending judicial resolution of criminal charges, using hearsay and written information to make that determination did not violate a defendant's federal constitutional rights. *See Edwards*, 430 A.2d at 1335. Because the protections provided in the D.C. Act were greater than those approved in *Gerstein*, *Edwards* held that it was constitutionally permissible to "proceed by the use of proffer and hearsay" at a pretrial detention hearing, "subject to the discretion of the judge" to require more in particular cases. *Edwards*, 430 A.2d at 1336-37.

## B.    Federal Courts

**{46}**  Encouraged by the experience with the D.C. Act, in 1984 Congress enacted similar detention authority for all federal courts in the Bail Reform Act of 1984, Pub. L. 98-473, 98 Stat. 1837, 1976-85 (Federal Act). *See* 18 U.S.C. §§ 3141-3150 (2012); French, *supra* at 197.

**{47}**  As with the D.C. Act, the Federal Act allowed federal courts to detain defendants pretrial if clear and convincing evidence at a detention hearing demonstrated that no release conditions would "reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(f), Federal Act 1979. The Federal Act also tracked the provision that the "rules concerning admissibility of evidence in criminal trials" were not applicable "to the presentation and consideration of information at the hearing." *Id.*, Federal Act 1980.

**{48}**  The United States Supreme Court directly addressed the constitutionality of the Federal Act in *United States v. Salerno*, 481 U.S. 739 (1987). As had the District of Columbia Court of Appeals in *Edwards*, the Supreme Court held that the Eighth Amendment protected only against setting monetary conditions in an amount higher than necessary to reasonably secure a defendant's presence at court proceedings and not against denial of release to protect public safety. *Id.* at 754-55 (holding that when the Government's "only interest is in preventing flight, bail must be set by a court at a sum designed to ensure that goal, and no more," but where detention is based on "a compelling interest other than prevention of flight," such as community safety, "the Eighth Amendment does not require release on bail").

**{49}**    *Salerno* also held that the procedural protections encompassed in the Federal Act, such as the right to counsel, the right to cross-examine any witnesses who do appear at the hearing, the right to present information by proffer or otherwise, and the clear and convincing burden of proof provided "extensive safeguards . . . [that] far exceed" what is required by the due process standards articulated in *Gerstein*. *Salerno*, 481 U.S. at 751-52; *see* 18 U.S.C. § 3142(f)(2)(B).

**{50}**    Since *Salerno*, a number of federal courts have specifically addressed whether the Federal Act permits a defendant to be detained pretrial based solely on nontestimonial information proffered by the government. For example, *United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir. 1987), relied on the District of Columbia holding in *Edwards* to hold that "the government as well as the defense may proceed by proffering evidence subject to the discretion of the judicial officer presiding at the detention hearing." *Accord United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) (stating that "proffers are permissible both in the bail determination and bail revocation contexts" but that a court "must also ensure the reliability of the evidence, by selectively insisting upon the production of the underlying evidence or evidentiary sources where their accuracy is in question" (internal quotation marks and citation omitted)); *United States v. Webb*, 238 F.3d 426 (table), 2000 WL 1721060 at 2 (6th Cir. 2000) (unpublished) ("The government may proceed in a detention hearing by proffer or hearsay."); *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996) (holding that the government may proceed by way of proffer instead of presenting live witnesses); *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) (holding that the government may present information "by proffer or hearsay" and that the "accused has no right to cross-examine adverse witnesses who have not been called to testify"); *United States v. Delker*, 757 F.2d 1390, 1396 (3d Cir. 1985) (holding that "discretion lies with the district court to accept evidence by live testimony or proffer"); *United States v. Acevedo-Ramos*, 755 F.2d 203, 206, 208 (1st Cir. 1985) (acknowledging that often the parties "simply describe to the judicial officer the nature of their evidence; they do not actually produce it," while simultaneously acknowledging a court's discretion to insist on direct testimony).

## C.    Massachusetts

**{51}**    Following the federal example, in 1994 the Massachusetts Legislature enacted new procedures to permit pretrial detention of proven dangerous defendants in prosecutions for designated felony and domestic abuse cases. *See* 1994 Mass. Acts 614, 617, now codified as Mass. Gen. Laws Ann. ch. 276, § 58A(3) (West 2017) (providing that upon motion by the prosecutor and after a hearing, if a judge "finds by clear and convincing evidence that no conditions of release will reasonably assure the safety of any other person or the community" in the designated categories of prosecution, the judge "shall order the detention of the person prior to trial"). There was no constitutional impediment to this statutory reform because the Massachusetts Constitution, like the United States Constitution and unlike the Pennsylvania model, contained a protection against excessive bail but no absolute right to pretrial release. *See* Mass. Const., Declaration of Rights Art. XXVI ("No magistrate or court of law, shall demand excessive bail or sureties, impose excessive fines, or inflict cruel or unusual

punishments.").

**{52}** The Massachusetts pretrial detention statute, like the D.C. Act and the Federal Act, was promptly subjected to a court challenge. *See Mendonza v. Commonwealth*, 673 N.E.2d 22, 35 (Mass. 1996) (upholding the constitutionality of detaining a defendant on clear and convincing proof of dangerousness). The Supreme Judicial Court in *Mendonza* also addressed a challenge to the provision of Section 58(A)(4), *see* 1994 Mass. Acts 617-18, that allows reliance on hearsay in pretrial detention hearings and provides that "[t]he rules concerning admissibility of evidence in criminal trials shall not apply to the presentation and consideration of information at the hearing." *See Mendonza*, 673 N.E.2d at 31-32.

**{53}** Noting that the United States Supreme Court had upheld the "analogous [f]ederal procedure" against constitutional attack, the *Mendonza* Court concluded that the Massachusetts statutory guarantees of the rights of the defense to cross-examine any witnesses the prosecution does call and to offer hearsay and other information, including witnesses, were sufficient to comply with due process requirements. *Mendonza*, 673 N.E.2d at 32 (citing *Salerno*, 481 U.S. at 751-52).

**{54}** While *Mendonza* settled the lawfulness of considering hearsay information in a detention hearing, it did not directly address whether a detention order could be entered without any live testimony at all. That question was directly answered in *Abbott A. v. Commonwealth*, 933 N.E.2d 936 (Mass. 2010), which upheld the exclusive use of nontestimonial evidence that "bore substantial indicia of reliability . . . to warrant a finding of dangerousness." *Id.* at 946-47.

### D.      Ohio

**{55}** Ohio faced a greater challenge than the federal government and Massachusetts in authorizing pretrial detention of dangerous defendants. Since its admission to the Union, the Ohio Constitution had tracked the Pennsylvania model in guaranteeing that "all persons shall be bailable by sufficient sureties, unless for capital offenses, where the proof is evident or the presumption is great." Ohio Const. of 1803, Art. VIII, § 12; *Smith v. Leis*, 2005-Ohio-5125, 835 N.E.2d 5, ¶¶ 18-20; *see also State ex rel. Jones v. Hendon*, 609 N.E.2d 541, 543 (Ohio 1993) (reaffirming that Section 9, Article I of the Ohio Constitution as worded at that time "guarantee[d] . . . an absolute right to bail" in noncapital cases); *Locke v. Jenkins*, 253 N.E.2d 757, 757 (Ohio 1969) (stating that "[t]he right to bail under that section is absolute, the only exception being for capital offenses. There is no discretion in the trial court in such matters.").

**{56}** As a result of that constitutional guarantee, Ohio had to amend its constitution before it could promulgate any pretrial detention procedures in noncapital cases. In 1997, the Ohio Legislature proposed and the voters passed a constitutional amendment to add new pretrial detention authority to Section 9, Article 1 "for a person who is charged with a felony where the proof is evident or the presumption great and where the person poses a substantial risk

12

of serious physical harm to any person or to the community." 1997 Ohio Laws H.J. Res. No. 5; 1997, 147 Ohio Laws Part IV, 9014, 9016; Ohio Const. art. I, § 9.

**{57}** Subsequent statutory enactments specified enumerated felonies for which a defendant could be detained and, as have laws in other pretrial detention hearing jurisdictions, provided that "rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing" and that the court "shall consider all available information regarding" the factors relevant to the defendant's dangerousness. Ohio Rev. Code Ann. § 2937.222(A), (C) (West 2017).

**{58}** Although the Ohio appellate courts have not yet squarely addressed the extent to which live witnesses could be required under their detention laws, appellate affirmances of detention decisions have included cases in which witnesses personally testified and in which they did not. *See, e.g.*, *State v. Urso*, 11th Dist. Trumbull No. T-0042, 2010-Ohio-2151, ¶¶ 4, 27, 77 (affirming a detention decision based on testimony of an investigating officer who summarized facts of the instant case and of the defendant's dangerous criminal history, primarily on the basis of hearsay documents), ¶ 70 (characterizing the evidence as not "weak," as contended by the defendant, "but rather [as] overwhelming"); *State v. Foster*, 10th Dist. Franklin No. AP-523, 2008-Ohio-3525, ¶ 8 (affirming a detention decision where the evidentiary record consisted of proffered representations and summaries by both sides and observing that the statute might "under other circumstances call for a more elaborate evidentiary hearing" but that "the facts of this case lend themselves to the approach taken").

### E.    New Jersey

**{59}** New Jersey is the most recent jurisdiction, other than New Mexico, to provide authority for courts to deny pretrial release to dangerous defendants following a hearing. Its comprehensive bail reforms "changed the landscape of the State's criminal justice system relating to pretrial release" by moving "away from heavy reliance on monetary bail," granting judges "the authority to detain defendants prior to trial if they present a serious risk of danger, flight, or obstruction," and releasing on nonmonetary conditions "[d]efendants who pose less risk." *State v. Robinson*, 160 A.3d 1, 4 (N.J. 2017).

**{60}** The New Jersey Constitution, like the old Pennsylvania model, guaranteed that "[a]ll persons shall, before conviction, be bailable by sufficient sureties, except for capital offences, when the proof is evident or presumption great." *See* N.J. Const. of 1844, art. I, ¶ 10; *see also* N.J. Const. of 1947, art. I, ¶ 11.

**{61}** Following New Jersey's legislative abolition of capital punishment in 2007, all defendants who posted bail had a constitutional right under that provision to be released before trial. *See Robinson*, 160 A.3d at 5. The result was that judges had to release defendants "who posed a substantial risk of flight or danger to the community" while jailing "poorer defendants accused of less serious crimes, who presented minimal risk," simply because they could not afford monetary bail. *Id.*

13

**{62}**    In 2013, the New Jersey Supreme Court created a broad-based committee to study the need for reforms, with representation "from all three branches of state government including the Attorney General, Public Defender, private attorneys, judges, court administrators, and representatives of the Legislature and the Governor's Office." *Robinson*, 160 A.3d at 6 (internal quotation marks and citation omitted). A key focus of the committee's recommendations the following year was to move from a resource-based, or money-based, system of release and detention to a risk-based system that relies on individualized evidence of danger or flight risk. Joint Committee on Criminal Justice, Report (March 10, 2014) at 2-4, *available at* https://www.judiciary.state.nj.us/courts/assets/criminal/finalreport3202014.pdf (last visited January 5, 2017). As the committee recognized, in order to accomplish that shift it would be necessary to amend the state constitution. *Id.* at 68.

**{63}**    In 2014, the New Jersey Legislature passed and voters adopted an amendment to the New Jersey Constitution that was a key to the ability to move from a money-based system of pretrial release and detention to one based on evidence of risk. *Robinson*, 160 A.3d at 6. It provided that a court could deny release if it found that no "conditions would reasonably assure the person's appearance in court when required, or protect the safety of any other person or the community, or prevent the person from obstructing or attempting to obstruct the criminal justice process." N.J. Const. art. 1, ¶ 11. In addition, the amendment provided that "[i]t shall be lawful for the Legislature to establish by law procedures, terms, and conditions applicable to pretrial release and the denial thereof authorized under this provision." *Id.*

**{64}**    Pursuant to this new authority, new sections of the New Jersey Criminal Justice Act addressing pretrial release and detention, N.J. Stat. Ann. §§ 2A:162-15 to -26 (West 2017), and new provisions in the New Jersey Supreme Court rules regulating pretrial detention procedures, N.J. Rule 3:4A (West 2017), took effect on January 1, 2017. Like other courts before them, the New Jersey appellate courts quickly found themselves considering the permissible modes of proof in their new detention hearings.

**{65}**    At 1:08 a.m. on the very day the new statutes and rules became effective, Amed Ingram, a convicted felon, was arrested on a number of serious firearm charges. *State v. Ingram*, 165 A.3d 797, 799-800 (N.J. 2017). The State moved for detention under the new laws, relying at the hearing on nontestimonial evidence consisting of "the complaint-warrant, the affidavit of probable cause, the PSA [risk-based public safety assessment], the PLEIR [preliminary law enforcement incident report], and defendant's criminal history." *Id.* at 800.

**{66}**    The defendant appealed the resulting detention order, arguing that allowing the prosecutor to proceed by a nontestimonial proffer alone violated the defendant's constitutional due process rights as well as the detention statutes. *Id.* at 801. Both the intermediate appellate court and the New Jersey Supreme Court affirmed the decision of the trial court, agreeing that neither the wording of the detention statutes nor principles of constitutional due process require testimony from a live witness at every detention hearing.

*Id.* at 801, 809-10. As had courts in other jurisdictions facing the issue, the New Jersey Supreme Court confirmed that "the State is not obligated to call a live witness at each detention hearing" but that "the trial court has discretion to require direct testimony if it is dissatisfied with the State's proffer." *Id.* at 809-10.

## F.    New Mexico

**{67}**    New Mexico's release and detention reforms came shortly after the New Jersey reforms. After this Court issued *Brown* in 2014, we took the first step toward methodically studying improvement of our pretrial justice practices in light of the "wave of bail reform" now taking place in the United States, *Brown*, 2014-NMSC-038, ¶ 36, by creating the Court's Ad Hoc Pretrial Release Committee. *See* New Mexico Supreme Court order, February 25, 2015 (No. 15-8110). The Committee included retired Dean and Professor Emeritus Leo M. Romero of the University of New Mexico School of Law as chair and a broad-based representation of experienced state and federal judges, prosecutors, defense attorneys, the New Mexico Senate and House of Representatives judiciary committees, the Attorney General's office, detention centers, and the commercial bail industry and was tasked with making recommendations it deemed "necessary to revise the rules and policies governing pretrial release in criminal proceedings in New Mexico state courts." *Id.*

**{68}**    The Committee, like similar bodies in other states, determined that public safety and the equal administration of justice were ill-served by our historical reliance on the ability to afford a secured bond as the determining factor in whether an accused defendant was entitled to be released pending trial, and that pretrial release decisions should instead focus on evidence-based assessments of individual risks of danger or flight.

## 1.    The November 2016 Constitutional Amendment

**{69}**    One of the first recommendations made by the Committee was to follow the recent Ohio and New Jersey examples and seek an amendment of the antiquated right-to-bail provisions of our state constitution to replace the money-based system of pretrial release with an evidence-of-risk-based system by giving judges new lawful authority to deny release altogether to defendants who pose unacceptable risks of public danger or flight, whether or not they can afford a bail bond.

**{70}**    The original proposal submitted by the New Mexico Supreme Court in 2015 to the Legislature's interim Courts, Corrections and Justice Committee was based on federal and state reforms elsewhere. That proposal would have added language to the Pennsylvania-model right-to-bail provisions in Article II, Section 13 of the New Mexico Constitution to provide that bail may be denied pending trial if, after a hearing, the court finds by clear and convincing evidence that no release conditions would reasonably ensure the appearance of the person as required or protect the safety of any other person or the community and that no person otherwise eligible for pretrial release could be detained solely because of financial inability to post a money or property bond.

**{71}** The Court's original proposed language was amended during the course of the legislative process to restrict judicial detention authority over dangerous defendants to judges in courts of record, which currently by statute does not include courts below the district courts; to permit detention only in felony cases; to require a prosecutorial request before the court may consider pretrial detention of a dangerous defendant; to textually place the burden of proving dangerousness on the prosecution; to remove any judicial authority to deny bail outright to nondangerous defendants who pose only a flight risk; and to add an explicit right to prompt judicial consideration of a motion alleging that a defendant cannot meet a particular amount of secured bond that a court has imposed.

**{72}** The resulting version, passed by the Legislature in the 2016 Regular Session as Senate Joint Resolution 1 and subsequently approved by 87% of New Mexico voters casting ballots on the issue in the November 2016 general election, amended Article II, Section 13 with the following provisions:

> Bail may be denied by a court of record pending trial for a defendant charged with a felony if the prosecuting authority requests a hearing and proves by clear and convincing evidence that no release conditions will reasonably protect the safety of any other person or the community. . . .

> A person who is not detainable on grounds of dangerousness nor a flight risk in the absence of bond and is otherwise eligible for bail shall not be detained solely because of financial inability to post a money or property bond. A defendant who is neither a danger nor a flight risk and who has a financial inability to post a money or property bond may file a motion with the court requesting relief from the requirement to post bond. The court shall rule on the motion in an expedited manner.

S.J.R. 1, 52nd Leg., 2nd Sess. (N.M. 2016), final version, *available at* https://www.nmlegis.gov/Sessions/16%20Regular/final/SJR01.pdf (last visited January 5, 2018); N.M. Const. art. II, § 13 (amendment effective November 8, 2016).

## 2.    The July 2017 Procedural-Rule Amendments

**{73}** At the time the rulings were made in the *Salas* and *Harper* detention hearings, all the participants were learning how to apply the new detention authority provided by the constitutional amendment. This Court had not completed the process of seeking and considering input on proposals from the Committee and others for procedural rule changes to regulate compliance with the constitutional requirements. *See Albuquerque Rape Crisis Ctr. v. Blackmer*, 2005-NMSC-032, ¶ 7, 138 N.M. 398, 120 P.3d 820 (discussing state law establishing that under the New Mexico Constitution the Supreme Court has the ultimate responsibility for promulgating rules relating to judicial procedures). Both Petitioner and Respondent were necessarily working with broad constitutional concepts and without the more detailed procedural guidance that would be provided by our subsequent bail rule

16

amendments, issued in June 2017 with an effective date of July 1, 2017. Because any future detention proceedings must comply not only with the broad requirements of the constitution but also with the new court rules, we briefly summarize those provisions here.

**{74}** While the constitutional amendment required few changes in Rule 5-401 NMRA (amendment effective July 1, 2017), which regulates release decisions and since its original promulgation in 1972 (*see Brown*, 2014-NMSC-038, ¶ 37) has followed federal law in requiring nonfinancial release conditions unless financial security is found necessary to assure a particular defendant's court appearance (*see State v Gutierrez*, 2006-NMCA-090, ¶ 16, 140 N.M. 157, 140 P.3d 1106), the new constitutional detention authority required promulgation of new procedural rules to guide its application.

**{75}** Only the district courts now have authority to enter detention orders, at least until and unless the Legislature designates any other courts as courts of record for detention hearings, and accordingly it was necessary to create a new district court pretrial detention process in our Rules of Criminal Procedure for the District Courts. *See* Rule 5-409 NMRA (effective July 1, 2017).

**{76}** Rule 5-409(B) provides for filing and service of motions to detain by the prosecution and of any responses by the defendant and requires notice of the detention request to the district court with detention authority, to any other courts in which the case may otherwise be pending, and to any detention centers with custody of the defendant. All release authority of any court other than the district court and of detention centers is immediately terminated pending the district court disposition of the detention motion, *see* Rule 5-409(C), (E)(1), subject to a requirement that the lower court ensure that a probable cause determination has been made in compliance with *County of Riverside v. McLaughlin*, 500 U.S. 44, 47, 56 (1991). *See* Rule 5-409(C) & committee cmt.; Rule 6-203 NMRA; Rule 7-203 NMRA.

**{77}** Rule 5-409(F)-(H) provides guidance for the detention hearing itself, including expedited time limits, discovery of reasonably available evidence, presentation of evidence by both prosecution and defense, and resulting findings by the court. During the pretrial detention hearing, "[t]he defendant has the right to be present and to be represented by counsel[,] . . . to testify, to present witnesses, to compel the attendance of witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." Rule 5-409(F)(3).

**{78}** If the district court denies the state's motion for pretrial detention, it must articulate what it found to be insufficient. Rule 5-409(H) ("The court shall file written findings of the individualized facts justifying the denial of the detention motion . . . .") Alternatively, if the district court grants the state's motion and detains the defendant, it must articulate in writing the "individualized facts justifying the detention . . . ." Rule 5-409(G).

**{79}** If the court orders detention, Article II, Section 13 of the New Mexico Constitution as well as Rule 5-409(L), Rule 5-405(F) NMRA (amendment effective July 1, 2017), and

Rule 12-204 NMRA (amendment effective July 1, 2017) provide for an expedited appeal.

**{80}** There is nothing in the text of the rules or their legislative history that would require live witnesses in every case or that otherwise would limit the discretion of the court in relying on information that it may find reliable and helpful. In fact, Rule 5-409(F)(5) now explicitly confirms that in detention hearings the formal rules of evidence "shall not apply to the presentation and consideration of information." This provision is consistent with our Rules of Evidence, which were in effect at the time of the detention hearings below and that have long provided that the rules "do not apply to . . . considering whether to release on bail or otherwise." Rule 11-1101(D)(3)(e) NMRA.

**{81}** To provide even more clarity, the published commentary to new Rule 5-409(F)(5) specifically cites precedents from other jurisdictions approving the use of sound judicial discretion in assessing the reliability and accuracy of information presented in support of detention, whether by proffer or direct proof, rather than the technical formalities of trial evidence rules. As the New Jersey Supreme Court noted in *Robinson*, 160 A.3d at 15, in addressing the similar New Jersey detention procedures, "the focus is not on guilt, and the hearing should not turn into a mini-trial."

**{82}** Our court rules simply do not impose any live witness limitations on the information considered at a pretrial detention hearing. We therefore address whether there are other federal or state constitutional constraints that might impose different requirements.

### 3. Federal Constitutional Law

**{83}** The federal precedents previously discussed in this opinion should put to rest any question whether the United States Constitution imposes any blanket requirement that live witnesses must testify at pretrial detention hearings.

**{84}** *Salerno*, 481 U.S. at 751, authoritatively disposed of general federal due process attacks on the kind of detention-for-dangerousness authority that is now part of both federal and New Mexico law: "When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing that threat."

**{85}** The United States Supreme Court has never directly addressed the issue whether live witnesses are required at detention hearings, but decades of federal circuit and district court opinions, as well as state appellate decisions, have consistently answered that question in the negative, as discussed earlier in this opinion.

### 4. New Mexico Constitutional Law

**{86}** Because the United States Constitution does not mandate live testimony in pretrial

18

detention hearings, our remaining task is to consider whether the New Mexico Constitution imposes more expansive requirements in state detention proceedings. *See State v. Gomez*, 1997-NMSC-006, ¶ 19, 122 N.M. 777, 932 P.2d 1 ("Under the interstitial approach, the court asks first whether the right being asserted is protected under the federal constitution. If it is, then the state constitutional claim is not reached. If it is not, then the state constitution is examined.").

**{87}** In language substantively indistinguishable from that of the Fourteenth Amendment to the United States Constitution, Article II, Section 18 of the New Mexico Constitution states, "No person shall be deprived of life, liberty or property without due process of law; nor shall any person be denied equal protection of the laws." As this Court has observed, "due process is a rather malleable principle which must be molded to the particular situation, considering both the rights of the parties and governmental interests involved." *State v. Valdez* (*In re Valdez*), 1975-NMSC-050, ¶ 13, 88 N.M. 338, 540 P.2d 818. "The amount of process due depends on the particular circumstances of each case." *State ex rel. CYFD v. Pamela R.D.G.* (*In re Pamela A.G.*), 2006-NMSC-019, ¶ 12, 139 N.M. 459, 134 P.3d 746.

**{88}** We have previously recognized that the Due Process Clause of the New Mexico Constitution requires that a defendant's protections at a pretrial detention hearing include "the right to counsel, notice, and an opportunity to be heard." *State v. Brown*, 2014-NMSC-038, ¶ 20 (analyzing the limited detention authority in Article II, Section 13 of the New Mexico Constitution before its 2016 amendment). Due process requires a meaningful opportunity to cross-examine testifying witnesses or otherwise challenge the evidence presented by the state at a pretrial detention hearing. *State v. Segura*, 2014-NMCA-037, ¶¶ 24-25, 321 P.3d 140.

**{89}** Counsel for Respondent Judge Whitaker relies on *Segura* and *State v. Guthrie*, 2011-NMSC-014, 150 N.M. 84, 257 P.3d 904, to contend that due process requires presentation of live witness testimony and a right of personal confrontation at a pretrial detention proceeding. But those cases do not establish any such bright-line requirements.

**{90}** In *Segura*, the defendant allegedly violated his pretrial conditions of release. 2014-NMCA-037, ¶¶ 1, 5. The district court revoked his release and ordered him into custody without providing notice of the revocation proceeding, the opportunity to examine witnesses who actually testified at the hearing, and the opportunity to present evidence in opposition to detention. *Id.* ¶¶ 6, 24. The Court of Appeals appropriately held that the defendant's due process rights were violated. *Id.* ¶ 25. But *Segura* did not hold that the state must call live witnesses in order for a defendant to have a meaningful opportunity to challenge the state's evidence. With particular relevance to the issues before us, *Segura* simply stands for the proposition that when the state does present the direct testimony of a witness at a hearing, due process requires the opportunity to cross-examine. *Id.* ¶¶ 24-25.

**{91}** In *Guthrie*, we addressed what process is due to a defendant in a probation revocation hearing. 2011-NMSC-014, ¶¶ 1-2. Significantly, we held that live testimony of probation

19

officers or other adverse witnesses "is *not* always required during probation revocation hearings" and that "[t]he trial court should focus its analysis on the relative need for confrontation to protect the truth-finding process and the substantial reliability of the evidence." *Id.* ¶¶ 12, 43. *Guthrie* specifically approved the use of "conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence" in probation revocation hearings as long as the "evidence offered has particular indica of accuracy and reliability." *Id.* ¶¶ 13, 20 (emphasis, internal quotation marks, and citations omitted). We stressed that "due process is flexible and calls for such procedural protections as the particular situation demands" and that "not all situations calling for procedural safeguards call for the same kind of procedure." *Id.* ¶ 11 (emphasis, internal quotation marks, and citation omitted).

**{92}**     No New Mexico precedent has ever held that the New Mexico Constitution requires live witnesses in pretrial release or detention hearings even though some forms of pretrial detention, such as in "capital offenses when the proof is evident or the presumption great," have always been permitted by Article II, Section 13 of the New Mexico Constitution. From the time when this Court promulgated the New Mexico Rules of Evidence in 1973, based almost wholly on the then-proposed Federal Rules of Evidence, both the New Mexico rules and the federal rules have specifically provided that the rules of evidence do not apply in considering "whether to release on bail or otherwise." Fed. R. Evid. 1101(d)(3); Rule 11-1101(D)(3)(e); *see State v. Martinez*, 2008-NMSC-060, ¶ 25, 145 N.M. 220, 195 P.3d 1232 (observing that the New Mexico rules "were patterned after . . . the proposed Federal Rules of Evidence").

**{93}**     While the authority of a New Mexico court to detain a defendant based on a finding of dangerousness is new, our courts have routinely made pretrial release and bail decisions on the basis of recorded materials, proffers, and other nontestimonial information with no appellate decision ever suggesting constitutional infirmity in this process. As discussed in *Brown*, 2014-NMSC-038, ¶¶ 28, 31, 35, these bail decisions have often resulted in pretrial detention for defendants who could not afford the bail amount set by the court. There is no principled reason why detaining arrestees because they are a danger to the community, rather than because they lack money to buy a bond, should require a different constitutional standard.

**{94}**     Because the detention-for-dangerousness provisions of the New Mexico Constitution were modeled in large part on federal detention statutes, using strikingly similar language, the interpretation of our constitutional requirements can also be informed by how federal courts have analyzed the same issue. *See State v. Clements*, 1988-NMCA-094, ¶ 15, 108 N.M. 13, 765 P.2d 1195 (looking to federal law in interpreting a New Mexico rule with language similar to the federal rule); *State v. Weddle*, 1967-NMSC-028, ¶ 8, 77 N.M. 420, 423 P.2d 611 (same), *contested on other grounds*, *Caristo v. Sullivan*, 1991-NMSC-088, 112 N.M. 623, 818 P.2d 401.

**{95}**     Our New Mexico Constitution and court rules relating to detention contain all the

procedural safeguards that the United States Supreme Court found constitutionally sufficient in *Salerno*, including a detention hearing requiring a clear and convincing showing of the need for detention and affording defendants the right to counsel, to testify, to "cross-examine witnesses who appear at the hearing," and to respond to charges through live witnesses or "proffer or otherwise." *See* 481 U.S. at 751-52. And as thoroughly discussed earlier, numerous federal courts have consistently rejected the notion that due process requires live witnesses at detention hearings. The federal law is both clear and persuasive, and we recognize no need to create a different constitutional standard for due process in New Mexico detention hearings.

**{96}**    We emphasize that pretrial detention of an accused person, prior to assessing individual guilt or innocence under the protections of constitutional due process, is not to be imposed lightly. *Salerno*, 481 U.S. at 755 ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."); *Mendonza*, 673 N.E.2d at 35 (cautioning that pretrial detention must not be permitted on a "casual and untested" basis); *Robinson*, 160 A.3d at 14 ("Balanced against important concerns for public safety are the defendants' liberty interests."). A detention-hearing court must take into account both the personal rights of the accused and the broader public interest as it makes a pretrial detention decision.

**5.        Determining Dangerousness**

**{97}**    This Court has not been asked to reverse or affirm the particular decisions denying detention in *Salas* or *Harper* but merely to determine the appropriate modes of testimony at detention hearings and to remand for new hearings in accordance with our opinion. We will attempt to provide the requested guidance in general terms, without prejudging their application to particular cases.

**{98}**    Like other courts addressing the issue, we caution that judges are still required to make reasoned judgments in evaluating evidentiary presentations. Making judgments about the persuasiveness of evidence is a core function of being a judge. While prosecutors may make proffers, tender documents and other exhibits, and ask the court to consider information in court records, a court may find the weight of any evidence, testimonial or nontestimonial, insufficient to meet the clear and convincing standard for detention in particular cases.

**{99}**    The first step in a detention hearing is to assess which information in any form carries sufficient indicia of reliability to be worthy of consideration by the court. In determining whether any information presented at a detention hearing contains indicia of reliability, a court can consider, for example, whether the information is internally consistent; whether it is credibly contested; whether it originates from or is conveyed by suspect sources; and whether it is corroborated or supported by accounts of independent observers, tangible evidence, a defendant's statements or actions, other sources, or other information.

21

**{100}** The court should then consider the extent to which that information would indicate that a defendant may be likely to pose a threat to the safety of others if released pending trial. While the goal of a pretrial detention hearing is not to impose punishment for past conduct, *Brown*, 2014-NMSC-038, ¶ 52, a defendant's past actions and statements can provide a sound basis for justifiable evidentiary inferences of likely future actions, which is the proper focus for the court and the parties under the new constitutional detention authority. *See* Rule 5-401(C)(3)(a).

**{101}** Both law and behavioral science recognize that in anticipating human behavior, "[o]ne of the predictive tools . . . is the consideration of one's character traits based on patterns of past conduct." *Martinez*, 2008-NMSC-060, ¶¶ 16, 23 (summarizing approaches to predicting behavior and discussing why the rules of evidence limit using evidence of bad character at trial for policy reasons, despite its undeniable "logical relevance"). Detention decisions, like release conditions, should not be based categorically on the statutory classification and punishability of the charged offense. But the particular facts and circumstances in currently charged cases, as well as a defendant's prior conduct, charged or uncharged, can be helpful in making reasoned predictions of future dangerousness. The fact that a defendant has shown a propensity for engaging in dangerous conduct in the past may be helpful in predicting whether that behavior is likely to continue in the future. That is why we stated in *Brown* that although "[n]either the Constitution nor our rules of criminal procedure permit a judge to base a pretrial release decision solely on the severity of the charged offense," a judge is required "to make an informed, individualized decision about each defendant." *Brown*, 2014-NMSC-038, ¶ 52. In order to do so a judge must consider all relevant information, including the conduct of a defendant in connection with the charged offense, in determining the kind of evidence-based, instead of charge-based, release conditions that would be reasonably necessary to assure return to court or to assure the safety of others. *See id.* ¶ 55.

**{102}** Finally, the court must determine whether any pretrial release conditions it could impose "will reasonably protect the safety" of others, as required by the new standard in Article II, Section 13 of the New Mexico Constitution. District Court Rule 5-401(C), (D)(13), like its counterparts in our rules for courts of limited jurisdiction, authorizes judges to impose release conditions that are "reasonably necessary to ensure the appearance of the defendant as required and the safety of any other person and the community." *See* Rule 6-401(C) NMRA (providing the same authorization in pretrial release considerations for the magistrate courts); Rule 7-401(C) NMRA (same for the metropolitan courts); Rule 8-401(C) NMRA (same for the municipal courts). In determining the adequacy of release conditions to protect public safety, it may be particularly helpful to consider whether a defendant has engaged in dangerous behavior while on supervised release or has refused to follow court-ordered conditions of release in the past.

**{103}** It is not surprising that the New Mexico Constitution, applicable court rules, and judicial precedents here and elsewhere all refer to the need for reasonableness in pretrial release and detention decisions. As we pointed out in *Brown*, "there is no way to absolutely

guarantee that any defendant released on any pretrial conditions will not commit another offense. The inescapable reality is that no judge can predict the future with certainty or guarantee that a person will appear in court or refrain from committing future crimes." *Brown*, 2014-NMSC-038 ¶ 54. But to the extent that we permit judges to take into account all helpful and reliable information in making those predictions, we will reduce the margins of error.

### 6.      Unlawful Use of Money Bail to Detain

**{104}**  In both the *Salas* and *Harper* detention orders the district court denied pretrial detention and then conditioned release on posting $100,000 bonds. Money bonds are not light substitutes for principled pretrial detention. The lawful purpose of a money bond is not to protect public safety but only to provide additional assurance that a released defendant will return to court. *See State v. Ericksons*, 1987-NMSC-108, ¶ 6, 106 N.M. 567, 746 P.2d 1099. A posted money bond does nothing to protect against commission of future crimes and cannot even be forfeited under New Mexico statutes "for anything other than failure to appear." *State v. Romero*, 2007-NMSC-030, ¶ 3, 141 N.M. 733, 160 P.3d 914; *see* NMSA 1978, § 31-3-2(B)(2) (1993). This inadequacy of money bonds to protect public safety is a major reason the Legislature and New Mexico voters realized that a constitutional amendment containing a more effective public safety mechanism was necessary.

**{105}**  Although we need not speculate on the purpose for the six-figure bonds in the two cases not before us for appellate review, courts have long recognized that we "should not be ignorant as judges of what we know as [people]." *Watts v. Indiana*, 338 U.S. 49, 52, 55 (1949) (holding a coerced confession unconstitutional and observing that our serious concerns about crime cannot be a justification for ignoring "the safeguards which our civilization has evolved for an administration of criminal justice"). It is common knowledge among judges and others who have worked in our courts that in the vast majority of cases imposition of high-dollar bonds for any but the most wealthy defendants is an effort to deny defendants the opportunity to exercise their constitutional right to pretrial release.

**{106}**  Setting a money bond that a defendant cannot afford to post is a denial of the constitutional right to be released on bail for those who are not detainable for dangerousness in the new due process procedures under the New Mexico Constitution. If a court finds that a defendant is too dangerous to release under any available conditions, the court should enter a detention order. If the court instead finds that a defendant is entitled to release under Article II, Section 13 of the New Mexico Constitution and Rule 5-409, the court must not use a money bond to impose pretrial detention. *Brown*, 2014-NMSC-038, ¶ 53 ("Neither the New Mexico Constitution nor our rules of criminal procedure permit a judge to set high bail for the purpose of preventing a defendant's pretrial release. . . . If a defendant should be detained pending trial under the New Mexico Constitution, then that defendant should not be permitted any bail at all."); *see also Bandy v. United States*, 81 S. Ct. 197, 198 (1960) ("It would be unconstitutional to fix excessive bail to assure that a defendant will not gain his freedom."). We have explicitly recognized this constitutional principle in the text of our

23

rules. *See* Rule 5-401(E)(1)(c) ("The court shall not set a secured bond that a defendant cannot afford for the purpose of detaining a defendant who is otherwise eligible for pretrial release.").

**{107}** Other jurisdictions have recognized this constitutional principle. As the Massachusetts Supreme Judicial Court emphasized, "a judge may not consider a defendant's alleged dangerousness in setting the amount of bail, although a defendant's dangerousness may be considered as a factor in setting other conditions of release." *Brangan v. Commonwealth*, 80 N.E.3d 949, 963 (2017). The court noted that if a defendant would pose a danger to the community under nonfinancial conditions of release, the court should comply with its detention authority granted by statute or constitution and court rules and by the accompanying due process requirements. *See id.* at 963-64. But if a defendant does not pose a danger to the community, the court should release the defendant under appropriate conditions. *See id.* at 964-65; *cf. Smith v. Leis*, 2005-Ohio-5125, 835 N.E.2d 5, ¶¶ 1, 66 (holding that imposition of a high-cash bond for the purpose of denying release of a defendant is unconstitutional but observing that the state could move to detain in compliance with the due process procedures in Ohio law).

**{108}** Following oral argument in this case, we announced our ruling from the bench, outlining the principles now embodied in this opinion, and we entered a contemporaneous written order granting the State's petition for writ of superintending control and remanding the *Salas* and *Harper* cases to the district court for action in conformity with our oral ruling and written order. *See* New Mexico Supreme Court order, April 12, 2017 (granting the petition and remanding). Those cases have not come back before us for appellate review.

**{109}** We now confirm our contemporaneous rulings in this case.

## III.    CONCLUSION

**{110}** We hold that neither the United States Constitution nor the New Mexico Constitution categorically requires live witness testimony at pretrial detention hearings. Under our procedural rules, judges may consider all reasonably reliable information, without regard to strictures of the formal rules of evidence, in considering whether any pretrial release conditions will reasonably protect the safety of any other person or the community.

**{111}  IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**JUDITH K. NAKAMURA, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**


_____
**BARBARA J. VIGIL, Justice**

25