## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2018-NMSC-006

Filing Date: January 11, 2018

Docket No. S-1-SC-36363

STATE OF NEW MEXICO,

     Plaintiff-Appellee,

v.

ELEXUS GROVES,

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett R. Loveless, District Judge**

Bennett J. Baur, Chief Public Defender
Scott Wisniewski, Assistant Public Defender
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
Martha Anne Kelly, Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**DANIELS, Justice.**

**{1}** Defendant Elexus Groves has been indicted on two counts of first-degree murder and other serious felony offenses. In this interlocutory appeal she challenges a district court order of pretrial detention that was based on two independent and alternative detention grounds contained in Article II, Section 13 of the New Mexico Constitution.

**{2}** The first ground was that Defendant was detainable under the provision that has been part of our Constitution since we became a state, providing an exception to the general right

1

to pretrial release for defendants charged with capital offenses.

**{3}** The second ground was based on the new detention authority added by New Mexico voters in the November 2016 general election, allowing denial of pretrial release of a felony defendant if the prosecuting authority requests a hearing and proves by clear and convincing evidence that no release conditions will reasonably protect the safety of any other person or the community.

**{4}** We hold that the district court's detention order was lawfully based on the new constitutional authority for pretrial detention of dangerous defendants, and we affirm it on that ground. As a result, there is no need to address in this opinion the issues Defendant raises relating to the alternative ground for the district court's action based on the old capital-offense exception, a matter that we have addressed separately in *State v. Ameer*, S-1-SC-36395. *See* N.M. Sup. Ct. order (May 8, 2017).

## I.      FACTUAL AND PROCEDURAL BACKGROUND

**{5}** Shortly after 6 a.m. on Friday, January 18, 2017, a man and a woman stole a van in Albuquerque. The two attempted to flee pursuing police officers, driving recklessly at extremely high speeds through residential city streets. Defendant, shown to be the apparent driver of the stolen van by physical evidence and her postarrest statements to police, crashed it into another car at an intersection, killing a teenage girl, fatally injuring the girl's mother, and breaking the leg of the girl's three-year-old brother. As logged by the van's GPS data, a moment before the crash the van was traveling at seventy-eight miles per hour in a thirty-five-mile-per-hour residential zone, and on impact it was traveling at sixty-eight miles per hour.

**{6}** After the fatal crash, the offenders jumped out of the stolen van and continued their flight from the police. They ran through adjacent neighborhoods, climbing backyard fences and attempting to distract residents so they could steal another vehicle. After they succeeded in stealing another car, they escaped the pursuing officers but left behind a number of clues that resulted in Defendant's identification and her arrest two days later.

**{7}** Among the clues, officers found a cell phone in the back yard of one witness who had called police to report that two unknown people had jumped over his fence. Investigation of that cell phone revealed a Facebook account belonging to coparticipant Paul Garcia and a call record showing contact between Garcia and Defendant.

**{8}** Near the place where the second vehicle had been stolen, officers discovered a jacket containing a letter addressed to Defendant from an attorney offering to represent her in connection with her pending criminal charges.

**{9}** Officers obtained security video footage from a business along the offenders' escape route that recorded two persons appearing to be Defendant and Garcia crossing a parking lot.

2

In the video, the person identified as Garcia was walking with only one shoe, which appeared to match a shoe found at the wrecked van.

**{10}** Following her arrest, Defendant initially appeared in metropolitan court, which set release conditions including the requirement that she post a $100,000 secured bond. The State filed a motion in district court to deny Defendant's release pending trial under the new provisions of Article II, Section 13 of the New Mexico Constitution, arguing that no conditions of release a court could impose would protect the safety of others. The case was promptly transferred to the district court, which has exclusive pretrial detention authority as a statutory court of record. *See Torrez v. Whitaker*, 2018-NMSC-___, ¶¶ 71, 75, ___ P.3d, ___ (S-1-SC-36379, Jan. 11, 2018).

**{11}** After a hearing at which no witnesses personally testified for either side, the district court denied the State's detention motion, continued the $100,000 secured bond, and imposed additional conditions of release. Because that order has not been appealed, we need not address it further.

**{12}** A grand jury then indicted Defendant on multiple charges related to the deadly January 18 chase, including two counts of first-degree felony murder, carrying potential sentences of life imprisonment. NMSA 1978, § 30-2-1(A)(2) (1994) (statutorily classifying felony murder as a "capital felony"); *see also* NMSA 1978, § 31-18-14 (2009) (providing that a person convicted of a "capital felony" shall be sentenced to life imprisonment).

**{13}** The day after indictment, the State filed a second detention motion, based exclusively on the new authority in Article II, Section 13 allowing denial of pretrial release when no release conditions will reasonably protect the safety of others. To support its request, the new motion proffered details of the newly-indicted offenses and a pattern of past criminal conduct, including significantly a pending prosecution in Sandoval County. That case, based on occurrences just a few weeks earlier, also involved a stolen vehicle and a high-speed attempted escape from police by Defendant and coparticipant Paul Garcia that ended with their crashing the stolen vehicle. The motion recited that in the Sandoval County case Defendant was on pretrial release conditions that she already had violated by a failure to appear by the time she committed the offenses in this case.

**{14}** That postindictment detention motion first came before a temporary arraignment judge, who heard presentations of counsel and a pretrial services officer's risk-assessment-instrument-based determination that she could not "make a [release] recommendation that would reasonably ensure public safety." The arraignment judge entered an order for detention relying on the "nature and circumstances of the offense charged," Defendant's "past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings," and "the nature and seriousness of the danger to any person or the community."

**{15}** Defense counsel filed a motion to review that detention order, arguing that collateral

3

estoppel principles precluded the arraignment judge from ordering detention after a previous judge had denied detention and that "no evidence was presented to [the arraignment judge] upon which she could base her ruling that pretrial detention [w]as appropriate."

{16}    At the hearing on Defendant's motion to review the detention order, the district judge who was assigned to preside over postindictment proceedings conducted an evidentiary hearing at which he considered arguments and factual representations of counsel, the contents of a number of court files reflecting Defendant's criminal history, the risk assessment provided by pretrial services, and the transcript of the prior hearing at which detention was ordered. No live witness testimony was presented by either party.

{17}    In addition to the factual circumstances underlying the current prosecution that were recounted in documents in the court files and described earlier in this opinion, the district court expressed concern about Defendant's conduct in the recent Sandoval County case. The court's concerns included Defendant's attempt to avoid arrest in that case by participating in a reckless high-speed chase that ended only after crashing the stolen getaway vehicle. The court also noted that the release conditions ordered in the Sandoval County case before Defendant committed similar unlawful conduct in this case included the requirement that she not violate any state laws. The court also pointed out that even before committing the crimes in this case Defendant failed to comply with her release conditions in that pending case by failing to appear for a scheduled preliminary hearing, causing issuance of a warrant for her arrest that had not been served at the time of the events in this case.

{18}    At the conclusion of the hearing the district court denied Defendant's motion to review the prior detention order and ordered Defendant to be detained pending trial. One of the stated legal grounds for the detention order, a theory that had not been proposed by the State but was raised sua sponte by the district court, was that the district judge believed Defendant was charged with a "capital offense" where "'the proof is evident or the presumption great.'"

{19}    As an alternative ground for detention, the court agreed with the State and concluded that Defendant's history of dangerous conduct and failure to abide by requirements of previous release orders established that "no conditions of release [would] reasonably protect the safety of any other person or the community from Defendant." The court also rejected Defendant's collateral estoppel argument, both because the interlocutory metropolitan court order of release or detention is not a final determination of an issue of pretrial detention and because the intervening grand jury indictment represented a significant change in circumstances.

{20}    Defendant appealed to this Court to review the final detention order, arguing (1) that she did not have fair notice that the capital-offense theory was going to be a basis of detention and therefore did not prepare to defend against it; (2) that the evidence at the hearing was insufficient to establish that the proof was evident or the presumption great under the capital-offense theory; and (3) the evidence, which did not include live witness

4

testimony, was insufficient to justify detention under the new detention-for-dangerousness constitutional grounds for denial of pretrial release.

**{21}** We scheduled oral argument and at its conclusion announced our affirmance of the detention order on the detention-for-dangerousness ground, without the need to reach other issues, and advised that we would follow up with this published opinion. *See* New Mexico Supreme Court order, April 12, 2017 (affirming the district court).

## II. DISCUSSION

**{22}** Article VI, Section 2 of the New Mexico Constitution assigns this Court exclusive jurisdiction over appeals from final district court judgments "imposing a sentence of death or life imprisonment." This Court correspondingly has exclusive jurisdiction over interlocutory appeals, including appeals from interlocutory release and detention orders in cases like this one in which a defendant is charged with first-degree murder, an offense that currently carries a possible life sentence. *State v. Brown*, 2014-NMSC-038, ¶ 10, 338 P.3d 1276 (citing *State v. Smallwood*, 2007-NMSC-005, ¶¶ 6-11, 141 N.M. 178, 152 P.3d 821 in holding that the Supreme Court has exclusive jurisdiction over appeals of release conditions in first-degree murder prosecutions).

**{23}** NMSA 1978, Section 39-3-3(A)(2) (1972) permits an appeal from an "order denying relief on a petition to review conditions of release," and Article II, Section 13 of the New Mexico Constitution requires that "[a]n appeal from an order denying bail shall be given preference over all other matters."

**{24}** Rule 12-204(D)(2)(b) NMRA, governing procedures in appeals from bail orders, provides that a district court decision shall be set aside only if it is shown that the decision (1) "is arbitrary, capricious, or reflects an abuse of discretion," (2) "is not supported by substantial evidence," or (3) "is otherwise not in accordance with law."

**{25}** "An abuse of discretion occurs when the court exceeds the bounds of reason, all the circumstances before it being considered." *Brown*, 2014-NMSC-038, ¶ 43 (internal quotation marks and citation omitted). Similarly, a decision "is arbitrary and capricious if it is unreasonable or without a rational basis, when viewed in light of the whole record." *N.M. Att'y Gen. v. N.M. Pub. Reg. Comm'n*, 2013-NMSC-042, ¶ 10, 309 P.3d 89 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *State ex rel. King v. B&B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 12, 329 P.3d 658 (internal quotation marks and citation omitted).

**{26}** With those principles in mind, we now address the merits of Defendant's appeal.

**{27}** The proceedings below occurred shortly after adoption of the constitutional amendment creating new authority for detention of defendants who are found to be too

dangerous to be released pending trial and before promulgation of our procedural rules governing application of the broad constitutional language, in particular new Rule 5-409 NMRA, governing detention proceedings in district court.

**{28}**     In *Torrez*, 2018-NMSC-___, we traced the history and purpose of the detention-for-dangerousness constitutional amendment and provided guidance for courts and litigants in conducting detention hearings. This is the first opinion in which we apply *Torrez*'s guidance in an appellate review of a detention ruling.

**{29}**     As we explained in *Torrez*, a detention hearing requires a judge to make three categories of determinations in deciding whether pretrial detention should be ordered: (1) "which information in any form carries sufficient indicia of reliability to be worthy of consideration," (2) "the extent to which that information would indicate that a defendant may be likely to pose a threat to the safety of others if released pending trial," and (3) "whether any potential pretrial release conditions 'will reasonably protect the safety' of others, as required by the new constitutional standard in Article II, Section 13." *Torrez*, 2018-NMSC-___, ¶¶ 99-102. Our appellate role in determining whether substantial evidence supported the district court decision and whether the judge abused his discretion or acted arbitrarily or capriciously necessarily must also take those analyses into consideration.

**{30}**     Looking at the first of those factors, we conclude that the district court was entitled to take into account the factually undisputed information from court and law enforcement files that has been summarized in this opinion. *See id.* ¶ 110 (holding that live witnesses may but are not required to be called at detention hearings and that judges "may consider all reasonably reliable information, without regard to strictures of the formal rules of evidence"); *see also* Rule 5-401(C) NMRA (summarizing information a court may consider in determining release conditions that might "reasonably ensure the appearance of the defendant as required and the safety of any other person and the community").

**{31}**     There is nothing in the record to raise serious doubts about the credibility of the police officers who conducted the investigations and prepared the resulting sworn and unsworn reports or of the independent victims and other witnesses who reported their own interlocking and cross-corroborating observations of Defendant's activities to the police. In its totality the factual information about Defendant's current and previous offenses that was relied on by the district court carried strong indicia of reliability in establishing the historical facts summarized earlier in this opinion.

**{32}**     The next required step is to consider how that information bears on an assessment of "the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release," as required by Rule 5-401(C)(4) in determining appropriate release conditions. The information in the record strongly supports the conclusion that Defendant has uncontrolled propensities to persist in the commission of unlawful and gravely dangerous conduct, as exemplified by three vehicle thefts in just a matter of a few weeks, each followed by recklessly dangerous flights from authorities on the

public streets. *See* Rule 5-401(C)(3)(a) (allowing the court's assessment to take into account "the history and characteristics of the defendant, including . . . the defendant's character, physical and mental condition, . . . past conduct, . . . [and] criminal history"). The undisputed facts include that two of the vehicle thefts and high-speed flights ended in vehicle crashes, the second causing the deaths of two people and the serious injury of another, just minutes before Defendant fled again with her partner, stole a third vehicle, and engaged in yet another motorized flight from authorities.

**{33}** We emphasize that the relevant consideration for a court is not the category or punishability of the charged crime. *See Torrez*, 2018-NMSC-___, ¶ 101. In a detention hearing the court's focused concern is not to impose punishment for past conduct but instead to assess a defendant's likely future conduct. *See id.* (explaining that "the particular facts and circumstances in currently charged cases, as well as a defendant's prior conduct, charged or uncharged, can be helpful in making reasoned predictions of future dangerousness").

**{34}** In this case, Defendant's past conduct created a strong basis for reasoned inferences of her likely future conduct. Defendant had not simply committed an isolated act of theft or of reckless driving. In the record before the district court in this case, the totality of Defendant's conduct fully justifies the district court's determination that she presented an unacceptable risk of continued endangerment of the public in the same manner if released, a determination well within the bounds of reason and a proper exercise of judicial discretion. *See Brown*, 2014-NMSC-038, ¶ 13.

**{35}** As to the third part of the detention analysis, several facts supported the district court's determination by clear and convincing evidence that no conditions of pretrial release the court could impose under Rule 5-401 would reasonably protect the safety of any other person or the community.

**{36}** The clear and convincing evidence standard is a recognized term of art in our jurisprudence. It refers to "evidence that instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *In re Locatelli*, 2007-NMSC-029, ¶ 7, 141 N.M. 755, 161 P.3d 252 (alteration in original) (internal quotation marks and citation omitted).

**{37}** The determination whether available release conditions would *reasonably protect* others does not require scientific accuracy any more than any other prediction of future human behavior. The key word is *reasonably*, which requires the exercise of reasoned judgment. As we noted in *Brown*, we cannot demand that human beings in judicial robes be omniscient. *See* 2014-NMSC-038, ¶ 54, (recognizing that "no judge can predict the future with certainty or guarantee that a person will appear in court or refrain from committing future crimes"). Instead, we require that judges consider available information, exercise reason, and make thoughtful judgments.

**{38}** In this case there were strong reasons supporting a conclusion that no available

release conditions a court could impose would protect against Defendant's likely future dangerous conduct. Apart from her record of continued criminal activity and dangerous conduct while on previous conditions of release, Defendant had demonstrated a pattern of refusal to comply with directions of the courts and of police. When Defendant committed the offenses in this case, she was on supervised release in two other cases. Defendant's conditions of prior release required, in part, that she not violate any state laws and that she appear at scheduled court proceedings, yet she refused to abide by those conditions. As the State pointed out below, even if the court were to impose conditions as extreme as GPS monitoring, she could still steal another vehicle and resist arrest by engaging in another dangerous or, as in this case, deadly escape from police.

**{39}**     We conclude that there was substantial evidence in the record to support the district court's detention decision and that the court neither abused its discretion nor acted arbitrarily or capriciously in finding by clear and convincing evidence that no conditions of release that could be ordered for Defendant would reasonably protect the safety of others.

**{40}**     An additional item of information that the district court took into account, although unnecessary to our finding of substantial evidence on this record, was the high-dangerousness score Defendant received on the Arnold Public Safety Assessment (PSA), a validated risk assessment that has been approved by this Court in the Second Judicial District as a pilot project. *See* Rule 5-401(C) (authorizing consideration of "any available results of a pretrial risk assessment instrument approved by the Supreme Court for use in the jurisdiction" in making release decisions). The PSA is a nationally recognized scientifically validated risk assessment instrument that courts in an increasing number of jurisdictions use as an aid, though never as the only factor, in making detention and release decisions. *See, e.g.*, *State v. Robinson*, 160 A.3d 1, 11 (2017) (describing New Jersey's statutorily-required use of the PSA and emphasizing that "judges consider the PSA but make the ultimate decision on release after reviewing other relevant information as well"); Arnold Foundation, *The Front End of the Criminal Justice System*, *Public Safety Assessment*, *available at* http://www.arnoldfoundation.org/initiative/criminal-justice/crime-prevention/public-safety-assessment/ (last visited January 6, 2018) (describing the purpose and operation of the PSA and naming some of the thirty-eight United States jurisdictions that have implemented it).

**{41}**     As a result of the 2016 constitutional reform, neither our courts nor our communities are helpless to prevent release of provably dangerous offenders, as was the reality under the old money-based system. Instead, our courts are authorized now to make evidence-based pretrial release and detention decisions that better protect public safety and provide for a more fair pretrial justice system.

**{42}**     In line with those reforms, this Court has also amended Rule 5-403 NMRA, Rule 6-403 NMRA, Rule 7-403 NMRA, and Rule 8-403 NMRA to clearly authorize all criminal courts to amend a defendant's release conditions or revoke pretrial release entirely for commission of new crimes or other violations of release orders, without waiting for a

8

noncompliant defendant to endanger or victimize someone else.

**{43}** This case is a good example of the wisdom of those constitutional and court-rule changes. There is no reason in law or logic that should compel our judges to do the same things over and over and expect different results. In this case, there is no reason for a court to believe that court-ordered release conditions would do any better in controlling Defendant's repeated dangerous conduct than release conditions have done in the past. In fact, Defendant has demonstrated by her own conduct that the opposite result is likely.

**{44}** We agree with the United States Supreme Court that under our American system of justice "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987) (upholding the federal detention-for-dangerousness statute). But in this case and on this record the district court justifiably determined that this defendant has earned a place in that carefully limited exception, not as punishment for her past acts but to protect others from her predictable future dangerousness.

## III.   CONCLUSION

**{45}** As we stated in our bench ruling following oral argument and in a contemporaneous written order, we affirm the order of the district court denying pretrial release to Defendant under the new authority in Article II, Section 13 of the New Mexico Constitution permitting courts of record to deny pretrial release by clear and convincing evidence that no release conditions will reasonably protect the safety of any other person or the community.

**{46}   IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**JUDITH K. NAKAMURA, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**BARBARA J. VIGIL, Justice**

9