The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: June 30, 2022

**NO. S-1-SC-38743**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.

**JESSE MASCARENO-HAIDLE,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Courtney B. Weaks, District Judge**

Presiliano Raúl Torrez, District Attorney
James W. Grayson, Deputy District Attorney
Albuquerque, NM

for Petitioner

Bennett J. Baur, Chief Public Defender
Kimberly M. Chavez Cook, Appellate Defender
Noah Walker Gelb, Assistant Appellate Defender
Santa Fe, NM

for Respondent

**OPINION**

**VIGIL, Justice.**

{1}    When one of our district court judges is asked to decide whether a person charged with committing a felony will be jailed pending trial, that judge must predict what that person's future behavior will be if released. But "there is no way to absolutely guarantee that any defendant released on pretrial conditions will not commit another offense." *State v. Brown*, 2014-NMSC-038, ¶ 54, 338 P.3d 1276. To reduce the margins of error, this inexact, consequential task demands that the judge be given as much information as possible prior to making a decision. *State ex rel. Torrez v. Whitaker*, 2018-NMSC-005, ¶ 103, 410 P.3d 201. This allows for an informed decision to be made that not only protects the dignity and constitutional rights of the accused, but it also protects society. *See* N.M. Const. art. II, § 13.

{2}    Here, the State failed to meet its evidentiary burden to place Defendant, Jesse Mascareno-Haidle, in pretrial detention. The State asks us to clarify the standard it must meet in order for the district court to grant pretrial detention. Specifically, the State challenges the requirement that it must prove that there are no release conditions that will reasonably protect the safety of any other person or the community if Defendant were released. Thus the State requests that it be allowed to present less, not more, information to a judge attempting to predict what a person's

future behavior will be. We decline the State's request and adhere to our order issued after oral argument upholding the Court of Appeals' affirmance of the district court's denial of pretrial detention. Having failed to meet the burden or preserve the issue, the State cannot be heard to complain. We write to explain our reasoning and rationale.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

{3} On January 29, 2021, Detective J. Allred of the Albuquerque Police Department filed a criminal complaint-arrest warrant which chronicled his efforts to investigate a series of residential burglaries in Albuquerque. The affidavit recites the following.

{4} A homeowner reported that on October 3, 2020, at approximately 3:30 a.m., a vehicle was stolen from his home using keys taken from inside the home while he and his family were sleeping. The intruder gained entry through a window facing the backyard, which was easily accessible from the street behind the home. A latent print impression from the window was obtained, and police determined that it matched a known fingerprint of Defendant. A second homeowner reported her home was burglarized overnight while her family was sleeping inside on November 19, 2020. There was no sign of forced entry. Entry was presumed to be from an unlocked back door, which the departing intruder had left wide open. The home backs directly onto

a recreation trail and arroyo, granting easy access to that back door. One of the items stolen was an Xbox with a unique serial number, and investigation disclosed that Defendant sold that Xbox to a pawnshop on December 2, 2020. On the basis of the evidence identifying Defendant in connection with these two incidents, Defendant was charged with one count of residential burglary, one count of unlawful taking of a motor vehicle, and one count of receiving/transferring stolen property (over $250, less than $500).

{5}     In January 2020, after investigating five other residential burglaries, Detective Allred concluded he was investigating a serial burglary case with common features: the burglaries occurred during the overnight hours while the occupants were sleeping, and entry was gained through an open window or door in the back of the home which was easily accessible by a main street or open space. Detective Allred began researching databases and dispatch call records of home burglaries that he knew of and that were reported as having occurred in the early morning hours. He discovered over eighty separate burglaries having taken place in Albuquerque in the middle of the night while the occupants were sleeping. In many of the cases, cars were stolen. Some homeowners had videos showing two or three burglars, and in all of them (except one) the burglars wore masks. Detective Allred also investigated six additional cases from Los Lunas which he believed involved the same suspects. The

remainder of Detective Allred's affidavit details both his investigation of seven specific burglaries with similar patterns and his investigation of Defendant, who was eighteen at the time, and two of his associates. The investigation also involved automobiles, stolen from burglarized homes, which ended up being parked or abandoned near Defendant's home.

{6}     Defendant was arrested on January 29, 2021, the day the criminal complaint-arrest warrant affidavit was filed. On the next day, the State filed a motion for pretrial detention pursuant to Article II, Section 13 of the New Mexico Constitution and Rule 5-409 NMRA. To support its motion, the State presented Detective Allred's criminal complaint-arrest warrant affidavit, the pretrial services public safety assessment (PSA)[1] recommending that Defendant be released on his own recognizance, the

---

[1]The PSA, developed by Arnold Ventures, is a multi-factor risk assessment tool that measures a defendant's risk—if released prior to trial—of failing to appear for judicial proceedings and engaging in new criminal activity or new violent criminal activity. *See* The University of New Mexico, *Bernalillo Cnty. Pub. Safety Assessment Validation Study*, 2 (June 2021), https://isr.unm.edu/reports/2021/bernalillo-county-public-safety-assessment-validation-study.pdf. The PSA's evaluative factors range from a defendant's present age and the violent nature, if any, of the charged offenses, to various aspects of a defendant's prior convictions and failures to appear, if any. *Id*. at 7; *id.* at 10, 22 (finding, inter alia, the PSA scores compiled in over 10,000 cases emanating from the risk assessment pilot program previously approved by this Court for use in the Second Judicial District to be "good" predictive indicators of new criminal activity and "fair" predictive indicators of new violent criminal activity).

results of a criminal history search pertaining to Defendant, and the register of actions in the case.

{7} A hearing on the motion for pretrial detention was held on February 3, 2021. The State rested its entire detention case on the foregoing documents. Noticeably lacking was any testimony from Detective Allred and any argument that no conditions of release could protect the community from Defendant if he were released. The district court judge denied detention. The district court judge found "that the magnitude of the allegations are inherently dangerous" but "that the State has failed to prove by clear and convincing evidence that no release conditions will reasonably protect the safety of another person or the community." Defendant was ordered to be released subject to conditions, including: pretrial services supervision and compliance with all of its conditions, not to possess any firearms or dangerous weapons, not to return to the location of any of the alleged crimes, not to consume alcohol, not to buy or sell or consume or possess illegal drugs, to notify the court of any change of address, not to leave Bernalillo County without prior permission of the court, to maintain weekly contact with his attorney, and not to leave his residence between the hours of 6:00 p.m. and 8:00 a.m. without prior permission of the court. The order setting conditions of release was filed on the day of the detention hearing, February 3, 2021.

{8}     Two days later, the State filed a second criminal complaint-arrest warrant affidavit signed by Detective Allred. These charges were based on facts that were also alleged in the criminal complaint-arrest warrant affidavit describing Detective Allred's investigation of a residential burglary taking place on December 16, 2020, in which two violins and a Lexus SUV were stolen while the occupants of the home slept. The charges were larceny (over $20,000), conspiracy to commit a second-degree felony, residential burglary, unlawful taking of a motor vehicle, two counts of conspiracy to commit a third- or fourth-degree felony, and contributing to the delinquency of a minor.

{9}     The State filed a second motion for pretrial detention pursuant to Article II, Section 13 of the New Mexico Constitution and Rule 5-409. As with the first motion, the State supported its second motion with Detective Allred's second criminal complaint-arrest warrant affidavit, an updated pretrial services PSA that again recommended Defendant's release on his own recognizance, the results of a criminal history search, and the register of actions in the case. An arrest warrant was issued, and on February 12, 2021, Defendant was arrested at his home—his required location under the existing conditions of his release.

{10}     At the hearing on its second motion for detention, which was held before a different district court judge, the State presented testimony of Detective Allred.

6

Detective Allred disclosed that after the initial motion for detention was denied, he and the prosecutor agreed they could move forward with certain charges "right away." They wanted to file new charges, so they could get another chance to obtain an order detaining Defendant pretrial. Their concern, "based on the circumstances surrounding the magnitude of these burglaries," was that Defendant would reoffend if not in custody.

{11}   When Defendant was originally arrested on January 29, 2021, he was cooperative and gave Detective Allred a two-hour recorded statement. Based on his notes at the time of the interview, Detective Allred estimated that Defendant admitted to committing around twenty-eight specific burglaries. Defendant specifically admitted committing the burglaries underlying the charges set forth in both of the pending criminal complaints. Defendant also identified his two accomplices. Defendant said that he committed the burglaries because, due to the COVID-19 pandemic, he was not able to work to support his daughter. Defendant was clear that he targeted homes in well-to-do neighborhoods or "rich houses," where the people could afford to replace the things that were stolen. Defendant was not able to remember some burglaries, and there were others that he absolutely denied committing, including the Los Lunas burglaries.

{12}    The sum of the burglaries Defendant admitted to committing, together with those Detective Allred suspected Defendant of committing, was between seventy-five and eighty in Albuquerque. Detective Allred added that a shotgun was found in a search of Defendant's home. In addition, the police found at the home of one of Defendant's accomplices a Glock handgun and the suppressor for an AR-15 (but not the AR-15 itself) that was stolen in one of the Los Lunas burglaries. Finally, the State presented evidence that two years prior, Defendant, a juvenile at the time, was caught committing a burglary with another juvenile.

{13}    Defendant's witness at the second detention hearing was Jessica Etoll, a licensed master social worker for the Law Offices of the Public Defender. She had scheduled an assessment with Defendant which did not take place due to his second arrest, but she spoke with Defendant on the day of the second hearing. Defendant was able and willing to work with her, and they came up with a plan for his release. The plan was for Defendant to live with his mother and two younger siblings and to work with his mother in an inventory collecting business. Ms. Etoll would also be assisting Defendant in obtaining his GED. Defendant needed to be involved with his seventeen-month-old child, so Ms. Etoll would not only be helping Defendant but she would also be helping his family. She stressed that it was important for Defendant to meet with her in person so she could continue with a needs assessment.

{14}     The district court then heard arguments from both sides. The State began its argument by reciting its evidentiary burden as mandated by Article II, Section 13 of the New Mexico Constitution: "So the State is arguing for pretrial detention, that [Defendant] is a danger to the community and that there are no release conditions that will reasonably protect the safety of the community or any other person." This passing, generic reference to "release conditions" was the only time the State mentioned the subject during the entire hearing. The State failed to present evidence that no conditions or combination of conditions could be imposed to reasonably protect the community if Defendant was released. Moreover, the State neither argued nor provided any assertion that conditions of release sufficient to reasonably protect public safety could not be imposed. Instead, the State focused its argument solely on the dangerousness component of the detention determination, drawing the district court's attention to Detective Allred's account of Defendant's alleged admission to committing multiple burglaries and the State's concern that the burglaries involved "some firearm connection."

{15}     The defense centered its argument on the State's failure to present evidence at both detention hearings: "[T]he State provided zero evidence as to whether or not [Defendant] can abide by conditions of release." Defense counsel pointed to Defendant's compliance with the release conditions imposed in the initial release

9

order, including Defendant's apparent adherence to the order's curfew requirements as reflected in the ease by which the police rearrested Defendant at his mother's residence during evening hours covered by the court-ordered curfew. Defense counsel asked the district court to release Defendant under the same conditions that were previously imposed following the first detention hearing.

{16}   Announcing its decision at the conclusion of the hearing, the district court stressed, "There's nothing more dangerous and—and more invasive than entering somebody's home through an unlocked door in the middle of the night. That is the most dangerous activity that you can engage in. I want to make that extremely clear. The extent of this is alarming—beyond alarming." However, based on the fact that the motion for detention was previously denied and that a period of time albeit short had passed, and no homes were burglarized in the interim, the district court concluded that "conditions of release can be fashioned in which the [c]ourt feels that they can prevent [Defendant] from committing future crime and protect the safety of the community."

{17}   A formal order was entered in which the district court found Defendant to be dangerous, but because "the State having again failed to provide by clear and convincing evidence that no conditions of release will reasonably protect the safety of another person or the community" and because "a good faith argument cannot be

made against release on conditions of release when the request for pretrial detention was already once denied and Defendant was without violation after that release," the State's second motion for detention was denied. Defendant was ordered to be released subject to the original conditions with the added requirements that he live at home, submit to drug and alcohol testing, maintain thirty hours of weekly employment, submit to medical, psychological, psychiatric or substance abuse treatment, and comply with geographical restrictions by GPS monitoring.

{18} The State appealed to the Court of Appeals, which summarily affirmed the district court's order, and we granted certiorari. *See* Rule 12-204 (D), (E) NMRA.

## II.    DISCUSSION

{19} The State's petition for certiorari reminds us that in *State v. Ferry*, 2018-NMSC-004, ¶ 6, 409 P.3d 918, we held "that the nature and circumstances of a defendant's conduct in the underlying charged offense(s) may be sufficient, despite other evidence, to sustain the State's burden of proving by clear and convincing evidence that the defendant poses a threat to others or the community." The State then declares, "The Court did not address whether this same evidence may be sufficient, by itself, to sustain the State's burden to prove that no release conditions will reasonably protect the safety of the community." The State appeals to this Court to answer that question.

11

## A. Standard of Review

{20} A district court's decision addressing pretrial release or detention issues will be set aside only upon a showing that the decision (1) "is arbitrary, capricious, or reflects an abuse of discretion," (2) "is not supported by substantial evidence," or (3) "is otherwise not in accordance with law." Rule 12-204(D)(2)(b). "An abuse of discretion occurs when the court exceeds the bounds of reason, all the circumstances before it being considered." *Brown*, 2014-NMSC-038, ¶ 43 (internal quotation marks and citation omitted); *see Ferry*, 2018-NMSC-004, ¶ 2 (defining the term *discretion* in the context of a pretrial detention appeal as "the authority of a district court judge to select among multiple correct outcomes"). "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *State v. Groves*, 2018-NMSC-006, ¶ 25, 410 P.3d 193 (internal quotation marks and citation omitted). And "a decision is arbitrary and capricious if it is unreasonable or without a rational basis, when viewed in light of the whole record." *Id.* (internal quotation marks and citation omitted).

## B. Bail Reform in New Mexico

{21} In *Brown*, 2014-NMSC-038, ¶¶ 19-38, and *Torrez*, 2018-NMSC-005, ¶¶ 33-68, we summarized the history of bail in New Mexico and the United States. We reiterate some of that history here to give context to our discussion and analysis.

{22} Beginning with statehood in 1912 and before it was amended, Article II, Section 13 of the New Mexico Constitution directed in pertinent part: "All persons shall be bailable by sufficient sureties . . . ." N.M. Const. art. II, § 13 (1911, amended 2016). In 1988, this right to bail provision was amended to read, "All persons shall, before conviction be bailable by sufficient sureties . . . .", N.M. Const. art. II, § 13 (1988, amended 2016); *see* 1988 N.M. Laws, 1st Special Session at 1120 ("Constitutional Amendment No. 5"), which persists today. With limited exceptions,[2] our Constitution has guaranteed all persons accused of committing crimes the right to bail and release pending trial. This was also true for almost every state constitution adopted after 1776, and at the federal level by the Judiciary Act of 1789, ch. 20, § 33, 1 Stat. 73. *Brown*, 2014-NMSC-038, ¶¶ 26-27. The constitutional right to bail upholds the fundamental principle that a defendant is not to be

---

[2]The first phrase of the current exceptions to the constitutional right to bail, "for capital offenses when the proof is evident or the presumption great," was present at statehood; the 1980 constitutional amendment added the second phrase of the current exceptions, "in situations in which bail is specifically prohibited by this section." N.M. Const. art. II, § 13 (1911, 1980, amended 2016); *see* 1979 N.M. Laws, 1st Regular Session at 2003 ("Constitutional Amendment 3"). The 1980 constitutional amendment also added the only two additional specific exceptions to the right to bail: when (1) the defendant was charged with "a felony and ha[d] previously been convicted of two or more felonies, within the state" and (2) the defendant was charged with "a felony involving the use of a [firearm] and ha[d] a prior felony conviction, within the state," neither of which the 2016 amendment retained. N.M. Const. art. II, § 13 (1980, amended 2016).

punished—imprisoned—until the charges brought by the state are proven beyond a reasonable doubt in a court of law. *See id.* ¶ 19. Thus the original purpose of bail in New Mexico was to ensure that the defendant appeared in court as required. *Id.* ¶ 38. Upon release, a defendant's pretrial freedom was conditioned on appearing in court as required, complying with the law, and complying with any conditions of release imposed by the court. *Id.* ¶ 21. A defendant's failure to satisfy any of these conditions could result in revocation of the release and a remand of the defendant into custody. *Id.*

{23}    Subsequently, studies of bail in the United States recognized inequities, chief among which was that money bail discriminated against the poor. *Id.* ¶¶ 28-32. Indigent defendants who were unable to post bail were therefore imprisoned—punished—solely because they could not afford to post bail or pay commercial bondsmen to secure their release pending trial. *Id.* These concerns motivated Congress to enact the Bail Reform Act of 1966, Pub. L. No. 89-465, 80 Stat. 214, the first major federal reform since the Judiciary Act of 1789. *Brown*, 2014-NMSC-038, ¶ 33. Under this act, release on personal recognizance was the presumptive norm, unless the judge "determined that such release [did] not reasonably assure the defendant's appearance in court," in which case the judge would determine a "conditional pretrial release under supervision or other terms" designed to

reasonably assure the defendant's appearance and decrease the risk of flight. *Id*. ¶ 33.

{24}    However, the 1966 act did not account for or recognize circumstances in which a defendant posted bond and was released but was a danger to another person or the community. *Id*. ¶ 34. This was addressed by Congress in the Bail Reform Act of 1984, which retains many of the key provisions of the 1966 act but at the same time "allows a federal court to detain an arrestee pending trial if the Government demonstrates by clear and convincing evidence after an adversary hearing that no release conditions 'will reasonably assure . . . the safety of any other person and the community.'" *United States v. Salerno*, 481 U.S. 739, 741, (1987) (omission in original) (quoting the Bail Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837); *see Brown*, 2014-NMSC-038, ¶ 34.

{25}    Our first bail rules were adopted in 1972. *Brown*, 2014-NMSC-038, ¶ 37. Modeled on the federal 1966 act, the rules normalized a presumption of pretrial release by the least restrictive conditions, emphasizing that they should not require financial security. *Id*. With the passage of the federal 1984 act, our rules added that the court, in fashioning conditions of release, was also required to consider the potential danger to the community caused by the defendant's release. *Id*. ¶ 38.

Nevertheless, a presumption of pretrial release under the least restrictive conditions remained the normative presumption. *Id*. ¶¶ 39-41.

{26} In 2016, for the first time since statehood, a constitutional amendment was passed which granted judicial authority to deny a defendant pretrial release. *Torrez*, 2018-NMSC-005, ¶ 1. In pertinent part, Article II, Section 13 of the New Mexico Constitution now states, "Bail may be denied by a court of record pending trial for a defendant charged with a felony if the prosecuting authority requests a hearing and proves by clear and convincing evidence that no release conditions will reasonably protect the safety of any other person or the community."

**C.    The Requirements for Pretrial Detention**

{27} In order to subject a presumed-innocent defendant to pretrial detention, the state is required to prove "by clear and convincing evidence that (1) the defendant poses a future threat to others or the community, and (2) no conditions of release will reasonably protect the safety of another person or the community." *Ferry*, 2018-NMSC-004, ¶ 3; *Torrez*, 2018-NMSC-005, ¶¶ 100, 102. That is the shared mandate of our New Mexico Constitution, court rules, and case law. *See* N.M. Const. art. II, § 13; Rule 5-409; *Ferry*, 2018-NMSC-004, ¶ 3; *Torrez*, 2018-NMSC-005, ¶¶ 100, 102.

16

{28} In keeping with the presumption of innocence that attaches to all defendants prior to conviction, and with the related maxim that "punishment should follow conviction, not precede it," *Sewall v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 481 P.3d 1249, 1253 (Nev. 2021) (internal quotation marks and citation omitted), our Constitution requires the state to be held to an exacting standard when it asks a court to order a defendant to remain jailed while awaiting trial. *See* N.M. Const. art. II, § 13. Proof by clear and convincing evidence represents that standard, one satisfied only by "evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *Groves*, 2018-NMSC-006, ¶ 36 (brackets, internal quotation marks, and citation omitted).

{29} Although the clear and convincing evidence threshold is a "heavy burden," *State v. Lara*, 1990-NMCA-075, ¶ 24, 110 N.M. 507, 797 P.2d 296, it is by no means beyond reasonable reach. In practical terms, the evidentiary burdens imposed on the state at a pretrial detention hearing are considerably less severe than those the state faces at trial. In this respect, our case law and court rules afford the state considerable flexibility and ease in presenting its case for detention by (1) dispensing with the rules of evidence, Rule 5-409(F)(5), (2) declining to extend a defendant's constitutional confrontation rights to a detention hearing, *Torrez*, 2018-NMSC-005,

17

¶¶ 45, 89, 91, and (3) not imposing any categorical requirement for live-witness testimony, *id.* ¶¶ 80-95, 110; *Ferry*, 2018-NMSC-004, ¶ 3 (endorsing the use in detention hearings of live testimony or a "proffer [of] documentary evidence in a form that carries sufficient indicia of reliability"). The state, far from being bound by all the requirements of the Constitution and the rules of evidence, may rely on "all helpful and reliable information" at its disposal, *Torrez*, 2018-NMSC-005, ¶ 103, to establish to the court's satisfaction, under the clear and convincing standard, that no conditions of release will reasonably protect the public against a defendant's future dangerousness. This lenient evidentiary burden persists even though a defendant detained while awaiting trial—and innocent until proven guilty—will be subjected to conditions of confinement identical to those imposed on a defendant proven guilty beyond a reasonable doubt at trial.

{30}    The state's burden of proving the first element required to obtain pretrial detention has been considerably lessened. The state may rely solely on "the nature and circumstances of a defendant's conduct in the underlying charged offense(s)" as sufficient to prove by clear and convincing evidence that a defendant is dangerous— that is, "that the defendant poses a [future] threat to others or the community." *Ferry*, 2018-NMSC-004, ¶ 6. Thus the state, the prosecuting authority that decides which

18

offenses to charge the defendant with in the first place, may now rely on those same charges for proof of dangerousness. *Id.*

{31} However, we also emphasized in *Ferry* that even if this initial burden is satisfied, "the State must still prove by clear and convincing evidence, under Article II, Section 13, that 'no release conditions will reasonably protect the safety of any other person or the community.'" *Ferry*, 2018-NMSC-004, ¶ 6. Here, the State's burden of proving this second element required for pretrial detention cannot be lessened. It is the constitutional standard mandated by Article II, Section 13. We have already noted that the State failed to produce any evidence or make any argument that no release conditions could be imposed to reasonably protect the safety of any other person or the community. "We are not oblivious to the pressures on our judges who face election difficulties, media attacks, and other adverse consequences if they faithfully honor the rule of law when it dictates an action that is not politically popular." *Brown*, 2014-NMSC-038, ¶ 54. Even so, under the Constitution and our rules, the district court judge in this case was left with no alternative but to deny the State's motion to detain Defendant. This legal dictation to which the district court judge adhered is not some new revelation. Since 2017, Rule 5-409(H) has directed that "[t]he court shall deny the motion for pretrial detention if, on completion of the pretrial detention hearing, the court determines

19

that the prosecutor has failed to prove the grounds for pretrial detention by clear and convincing evidence."

{32} Recognizing that it failed (twice) to make its case, the State now asks us to ignore the explicit mandate of the Constitution and our rules and hold that the nature and circumstances of a defendant's conduct in the underlying charged offense(s) may be sufficient, by itself, to sustain the State's burden to prove that no release conditions will reasonably protect the safety of the community.

**D. The State's Misplaced Reliance on a Single Factor as Dispositive of the State's Detention Burden**

{33} We now turn to the core of the State's appeal, its contention that the "extreme" nature of Defendant's "lawlessness" evidenced a "habitual wanton disregard for the law and for homeowner safety," a circumstance that, in the State's view, is incompatible with a finding that a combination of release conditions could provide an adequate deterrent to further dangerous criminal conduct. As explained next, this argument is both unpreserved for appellate review and lacking in merit.

{34} As for preservation, at the detention hearing giving rise to this appeal, the State failed to make any argument to the district court judge that no release conditions could be imposed that would reasonably protect the safety of any other person or the community, and the State never invoked a ruling from the district court judge on the issue that it now raises on appeal. *See* Rule 12-321(A) NMRA In fact,

20

this Court expressed its concern regarding the State's failure to argue to the district court that no conditions of release would be sufficient to protect the community from Defendant. The State conceded that it was required to make the argument and acknowledged that its arguments to the district court only "focused on dangerousness." This familiar preservation principle takes on particular significance in the context of pretrial detention hearings. After all, rulings stemming from detention hearings are by their nature high-stakes endeavors fraught with uncertainty; rulings made all the more challenging by the short deadlines governing their issuance. *See* Rule 5-409(G), (H) (requiring the district court to issue an order granting or denying a detention motion upon the completion of the detention hearing and to file "findings of the individualized facts" justifying its ruling "no later than three (3) days after the conclusion of the hearing"). Considering the demanding nature of the district judges' role in deciding pretrial detention motions, it is incumbent on the prosecuting attorney and defense counsel alike to clearly stake out their respective hearing positions on the record. The interests of justice—and of fairness to all involved and to the community at large—demand no less.

{35} Here, when asked if there were "any other arguments as to conditions of release," the State responded, "I would ask for a GPS monitor." The district court judge then announced the updated conditions of release, including GPS monitoring,

21

and asked again, "Is there any other conditions of release or any other arguments from [the State] or [Defendant] at this time?" The State responded, "No arguments, Your Honor." Having failed at the detention hearing giving rise to this appeal to raise any argument opposing Defendant's release on conditions, the State will not now be heard to complain that the hearing's outcome on that issue was not to its liking.

{36} Moreover, putting such preservation issues aside, the State would not prevail even were we to consider its apparent contention that the district court erred in not giving dispositive effect to the nature and circumstances of Defendant's underlying conduct in gauging the likely effectiveness of potential release conditions. That position is directly at odds with controlling precedent from this Court, which makes clear that pretrial detention or release decisions cannot be made to turn on any single factor, be it the nature and circumstances of the charged offense(s) or otherwise. *See Torrez*, 2018-NMSC-005, ¶ 101 ("Detention decisions, like release conditions, should not be based categorically on the statutory classification and punishability of the charged offense."); *Brown*, 2014-NMSC-038, ¶ 52 ("Neither the Constitution nor our rules of criminal procedure permit a judge to base a pretrial release decision solely on the severity of the charged offense."); *Ferry*, 2018-NMSC-004, ¶ 7 (cautioning "litigants and the court" against "automatically consider[ing] any one

factor to be dispositive in pretrial detention hearings"). To allow the State to rely solely on the nature and circumstances of the charged offenses, not only to prove that the defendant poses a future threat to others or the community but also to prove that no release conditions will reasonably protect the safety of any other person or the community, would all but eliminate Article II, Section 13 and the corresponding constitutional burden of the State.

{37} Adoption of such a rigid interpretation of Rule 5-409(F)(6) also would run counter to what aptly has been described in the federal realm as the unique, "factbound" nature of a court's pretrial detention determination, which "must be made individually and, in the final analysis, must be based on evidence which is before the court regarding the particular defendant." *United States v. Tortora*, 922 F.2d 880, 888 (1st Cir. 1990); *see id.* ("No two defendants are likely to have the same pedigree or to occupy the same position."); *accord United States v. Traitz*, 807 F.2d 322, 325-26 (3d Cir. 1986) ("Each [pretrial detention] case, of course, is *sui generis*, and must be decided on the basis of the particular record adduced.").

{38} Instead, a more expansive, broad-based approach is dictated under the prevailing New Mexico court rule governing the pretrial detention process, whose provisions make clear that the district court

> *shall* consider *any* fact relevant to the nature and seriousness of the danger to any person or the community that would be posed

23

by the defendant's release and any fact relevant to the issue of whether any conditions of release will reasonably protect the safety of any person or the community.

Rule 5-409(F)(6) (emphases added). The rule, in Subparagraphs (a)-(g), goes on to set forth a nonexhaustive list of seven factors intended to guide the parties' presentation of evidence—and the resulting findings of the court—bearing on the two central inquiries stated at the beginning of Subsection (F)(6) of the rule: "the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release" and the separate but related question of "whether any conditions of release will reasonably protect the safety of any person or the community." The relevant factors specified in Rule 5-409(F)(6) are as follows:

> (a) the nature and circumstances of the offense charged, including whether the offense is a crime of violence;
> (b) the weight of the evidence against the defendant;
> (c) the history and characteristics of the defendant;
> (d) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release;
> (e) any facts tending to indicate that the defendant may or may not commit new crimes if released;
> (f) whether the defendant has been ordered detained under Article II, Section 13 of the New Mexico Constitution based on a finding of dangerousness in another pending case or was ordered detained based on a finding of dangerousness in any prior case; and
> (g) any available results of a pretrial risk assessment instrument approved by the Supreme Court for use in the jurisdiction, provided that the court shall not defer to the recommendation in the instrument but shall make an independent determination of dangerousness and community safety based on all information available at the hearing.

24

{39} The first of the factors listed for consideration under this rule involves "the nature and circumstances of the offense charged." Rule 5-409(F)(6)(a). Nothing in the rule suggests, however, that the placement of this factor at the top of the list of other relevant factors somehow signals that singular importance can be given to it. And the State offers no textual analysis in support of such an interpretation. Nor is there any other basis on which to construe the rule in a manner more restrictive than its literal wording and in the process allow detention judges to consider "the nature and circumstances of the offense" factor in isolation and to the exclusion of all other relevant factors, whether those factors are expressly identified in the rule or not. To the contrary, Rule 5-409(F)(6) must be read to require a detention court to engage in a delicate case-by-case balancing of *all* relevant factors, with the calculus limited only "by what evidence the litigants present." *Ferry*, 2018-NMSC-004, ¶ 7.

**III.    CONCLUSION**

{40} For the reasons stated in this opinion, we abide by our prior order upholding the Court of Appeals' affirmance of the district court's denial of pretrial detention.

{41}    **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Justice**

25

**WE CONCUR:**

_____
**C. SHANNON BACON, Chief Justice**

_____
**DAVID K. THOMSON, Justice**

_____
**JULIE J. VARGAS, Justice**